UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 05-30061-MAP

| | |
|---|---|
| MARK A. RICHARDS, )<br>    Plaintiff )<br>)<br>vs. )<br>)<br>RIVER VALLEY COUNSELING CENTER, INC., )<br>VALLEY HEALTH SYSTEMS, INC., )<br>DAVID G. MATTOCKS AND DONNA VIENS, )<br>    Defendants ) | |

**PLAINTIFF'S MOTION TO COMPEL FURTHER
DESIGNATION OF RULE 30(b)(6) DEPONENT**

**INTRODUCTION AND CERTIFICATE OF CONSULTATION**

This case involves claims by the plaintiff, Mark Richards, that the defendants illegally terminated his employment because of his taking intermittent leave under the Family and Medical Leave Act to take care of his ill daughter. Such conduct also violates the provisions of the Americans with Disabilities Act which protects those in a relationship with persons with a disability. Furthermore, the plaintiff alleges the defendants impermissibly replaced him with a much younger person in violation of state and federal age discrimination laws and discrimination against him because of his skin cancer.

The plaintiff issued a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6) listing seven topics that the plaintiff wished to inquire upon. See Exhibit 1, 30(b)(6) deposition notice. The defendant, River Valley Counseling Center, produced two witnesses in response to the 30(b)(6) deposition notice, Jeffrey Kassis and Matthew Haas. During the deposition, both Mr. Kassis and Mr. Haas testified that they had done little to acquaint themselves with the factual basis upon which they were called to testify. Such lack of preparedness amounts to a failure to properly

423732

designate a deponent under Rule 30(b)(6) and, therefore, the plaintiff moves for an order compelling proper designation of a 30(b)(6) deponent on all items of Exhibit 1.

This Court held a Status Conference on March 17, 2006, at which time the issue of the adequacy of the designation of 30(b)(6) deponents was raised. The defendant River Valley Counseling Center, Inc. indicated to the Court that it believed it had fully complied with Rule 30(b)(6) and thus the plaintiff would have to file a motion to compel. The Court then set the matter down for a briefing schedule.

This motion is brought pursuant to Rule 37(a)(3).

## STATEMENT OF LAW

Federal Rule of Civil Procedure 30(b)(6) requires that an organization named in a 30(b)(6) deposition notice "shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify." The Rule goes on to state the persons "so designated shall testify as to matters known *or reasonably available* to the organization." (Emphasis supplied). To meet its duty under Rule 30(b)(6), the organization must produce a deponent who is knowledgeable on the subject matter identified in areas of inquiry; the designated party must prepare the witness to testify on matter not only known by the deponent but those that should be known by the designating party; and the designating party must substitute an appropriate deponent when it becomes apparent that the previous deponent is unable to respond to certain relevant areas of inquiries. See generally, *Alexander v. FBI,* 1986 F.R.D. 137, 141 (D. D.C. 1998); Moore's Federal Practice, Third Ed., 2005, Paragraph 30.25[3]. If a corporation is truly unable to designate a representative under Rule 30(b)(6), it must seek a protective order. In the absence of a protective order, failure to designate a representative who

423732

can answer questions on the subject matter may result in sanctions. *Id.* See *Mitsui & Co. v. Puerto Rico Water Resources Auth.,* 93 F.R.D. 62, 67 (D. P.R. 1981).

In this District, it is clear that the organization must prepare those persons it designates as 30(b)(6) deponents in order that they can answer fully, completely and unevasively the questions posed as to the relevant subject matter. See *Calzaturficio S.C.A.R.P.A.S.P.A. v. Fabiano Shoe Company Inc.,* 201 F.R.D., 33, 36 (D.Mass. 2001); *Briddell v. St. Gobain Abrasives Inc.,* 233 F.R.D. 57, 60 (D.Mass. 2005).

**ARGUMENT**

A. **Both Deponents Were Unprepared In Key Areas.**

1. **Jeffrey Kassis**

The defendant first designated Jeffrey Kassis to testify about Topic 1, the work history of the decision maker in this case, David Mattocks; Topic 4, the work of consultants Jeffrey Eagle and his company, Health Enhancement Services, Inc.; and Topic 6, the plaintiff's application for employment, employment compensation, job performance, discipline and/or termination. Obviously, Topics 1 and 6 are at the absolute heart of the case. See generally, Exhibit 1.

Mr. Kassis did virtually nothing to prepare for his role as a 30(b)(6) deponent other than speaking to counsel, Attorney Kennedy. See Exhibit 2, excerpts of 30(b)(6) deposition of Jeffrey Kassis at pages 6-8. He did not speak with any witnesses (pp. 7-8; 17, 22-25), nor did he review Mr. Mattocks' personnel file (p. 19); or the considerable deposition transcripts or other discovery taken in this case previously (pp. 25-26).

At the end of his deposition, counsel for the plaintiff noted that he was going to suspend the deposition because it was unclear whether the deponent had taken the steps necessary to be an appropriate 30(b)(6) deponent. See Exhibit 2, pp. 26-27.

423732

Even a quick perusal of the deposition transcripts indicate that Mr. Kassis took virtually no steps to testify as to important topics relevant to this case.

### 2. **Matthew Haas.**

The defendant then produced Matthew Haas to testify as a 30(b)(6) deponent as to Topics 2, 3, 5 and 7. Topic 2 deals with the relationship between two affiliated companies – HC Management Services, Inc. and Valley Health Systems, Inc. Topic 3 deals with the relationship between HC Management Services, Inc. and River Valley Counseling Center, Inc. Topic 5 deals with the work history of the individual defendant Donna Viens. Topic 7 relates to the defense of "River Valley Counseling Center to the claims of Mr. Richards."

Mr. Haas did not review the deposition transcript of Mr. Porten prior to his testimony; did not review any specific documents other than a Management Agreement; and did not interview Mr. Mattocks. See generally, Exhibit 3, excerpts of 30(b)(6) deposition of Matthew Haas; Exhibit 1, pp. 5-7, 15-16. While his lack of preparedness pales in comparison to that of Mr. Kassis, it still failed to relevant test under Rule 30(b)(6).

### **REQUEST FOR RELIEF**

The plaintiff respectfully requests that the Court order the defendant River Valley Counseling Center, Inc. to produce a fully informed 30(b)(6) deponent(s) within two weeks.

THE PLAINTIFF
MARK A. RICHARDS

By      */s/ John C. Sikorski*
John C. Sikorski, Esq., of
Robinson Donovan, P.C.
1500 Main Street,  Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.:  461970
jsikorski@robinson-donovan.com

423732

CERTIFICATE OF SERVICE

      I, John C. Sikorski, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 31, 2006.

      Subscribed under the penalties of perjury.

                                              */s/ John C. Sikorski*
                                              John C. Sikorski, Esq.

423732

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 05-30061-MAP

MARK A. RICHARDS, )
    Plaintiff )
)
vs. )
)
RIVER VALLEY COUNSELING CENTER, INC., )
VALLEY HEALTH SYSTEMS, INC., )
DAVID G. MATTOCKS AND DONNA VIENS, )
    Defendants )

EXHIBIT 1  1/31/06

### RE-NOTICE OF TAKING DEPOSITION

To:   Mary Jo Kennedy, Esq.
       Bulkley, Richardson, & Gelinas, LLP
       1500 Main Street, Suite 2700
       Springfield, MA 01115

       Marylou Fabbo, Esq.
       Skoler, Abbott & Presser, P.C.
       One Monarch Place, Suite 2000
       Springfield, MA 01144

    PLEASE TAKE NOTICE that commencing at **1:30 p.m.** on **January 31, 2006**, at the offices of Robinson Donovan, PC, 1500 Main Street, Suite 1600, Springfield, MA 01115, the plaintiff in this action by his attorney will take the deposition upon oral examination of the defendant, **River Valley Counseling Center**, pursuant to Fed. R. Civ. P. 30(b)(6) before Accurate Court Reporting, Notary Public in and for the Commonwealth of Massachusetts, or some other officer authorized by law to administer oaths. The oral examination will continue from day to day until completed.

    The deponent is respectfully advised of its duty, under Rule 30(b)(6) of the Rules of Civil Procedure, to designate one or more persons to testify on its behalf in connection with any deposition which calls for the person "**with the most knowledge**" about any topic.

    The deposition is to be by and through **River Valley Counseling Center's** designated representative with the most knowledge as to each of the following topics:   **See Schedule A attached hereto.**

418175

The deponent is further required to bring the following records: **See Schedule B attached hereto.**

You are invited to attend and cross examine.

                                             THE PLAINTIFF
                                             MARK A. RICHARDS

By *[signature]*

John C. Sikorski, Esq.
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO # 461970

### CERTIFICATE OF SERVICE

I, John C. Sikorski, Esq., hereby certify that on this ___ day of January, 2006, I served a copy of the above upon the parties in the action By Hand, to counsel, Mary Jo Kennedy, Esq., Bulkley, Richardson, & Gelinas, LLP, 1500 Main Street, Suite 2700, Springfield, MA 01115, and Marylou Fabbo, Esq., Skoler, Abbott & Presser, P.C., One Monarch Place, Suite 2000, Springfield, MA 01144.

Subscribed under the penalties of perjury.

                                               *[signature]*
                                              John C. Sikorski, Esq.

cc:  Accurate Court Reporting

418175

## **EXHIBIT A**

The persons with the most knowledge concerning:

1. David Mattocks (Address: Vernon, VT) including, but not limited to, his employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, David Mattocks to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with David Mattocks' application for employment, employment compensation, job performance, discipline, termination, and/or resignation.

2. The relationship, affiliation, and/or association with or between H-C Management Services, Inc. and Valley Health Systems, Inc.

3. The relationship, affiliation, and/or association with or between H-C Management Services, Inc. and River Valley Counseling Center.

4. Any work, inquiries, or other assistance provided by Jeffrey Eagle and/or Health Enhancement Services, Inc., concerning or related to David Mattocks.

5. Donna Viens including, but not limited to, her employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, Donna Viens to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with Donna Viens' application for employment, employment compensation, job performance, and/or discipline.

6. Mark Richards (Address: 19 Lyman Rd., Chester, MA) including, but not limited to, his employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, Mark Richards to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with Mark Richards' application for employment, employment compensation, job performance, discipline, and/or termination.

7. The defense of River Valley Counseling Center to the claims of Mr. Richards.

414206

## **EXHIBIT B**

### DEFINITIONS

A. "Documents" means all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notations made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, contracts, reports, studies, checks, statements, receipts, returns, summaries, pamphlets, logs, tapes, agreements, files, books, prospectuses, interoffice and intra-office communications, bulletins, printed matter, computer printouts, teletypes, telefaxes, invoices, worksheets and all drafts, alterations, modifications, changes and amendments of any kind, including without limitation, tapes, cassettes, disks and recordings) and all e-mail communications.

B. "Document" also includes but is not limited to any electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software); any "deleted" but recoverable electronic files on said media; any electronic file fragments (files that have been deleted and partially overwritten with new data); and slack (data fragments stored randomly from random access memory on a hard drive during the normal operation of a computer [RAM slack] or residual data left on the hard drive after new data has overwritten some but not all of previously stored data).

### DOCUMENTS/ITEMS REQUESTED

You are required to bring with you the original documents and things set forth below:

1. All records concerning David Mattocks (Address: Vernon, VT) including, but not limited to, a complete copy of his personnel file, all records concerning his employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, David Mattocks to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with David Mattocks' application for employment, employment compensation, job performance, discipline, termination, and/or resignation; all documents concerning David Mattocks not specifically referred to herein.

414204

2. All documents evidencing, stating, or otherwise indicating the relationship, affiliation, and/or association with or between H-C Management Services, Inc. and Valley Health Systems, Inc. including, but not limited to, any documentation filed with the Massachusetts Secretary of State and/or Commonwealth of Massachusetts.

3. All documents evidencing, stating, or otherwise indicating the relationship, affiliation, and/or association with or between H-C Management Services, Inc. and River Valley Counseling Center including, but not limited to, any documentation filed with the Massachusetts Secretary of State and/or Commonwealth of Massachusetts.

4. All documents received by, or sent to or exchanged with, Jeffrey Eagle and/or Health Enhancement Services, Inc., concerning or related to David Mattocks.

5. All records concerning Donna Viens including, but not limited to, a complete copy of her personnel file, all records concerning her employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, Donna Viens to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with Donna Viens' application for employment, employment compensation, job performance, and/or discipline; all documents concerning Donna Viens not specifically referred to herein.

6. All records concerning Mark Richards (Address: 19 Lyman Rd., Chester, MA) including, but not limited to, a complete copy of his personnel file, all records concerning his employment with H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities, all documents submitted by, or on behalf of, Mark Richards to H-C Management Services, River Valley Counseling Center, Valley Health Systems, or any corporation or entity associated or affiliated with any of the aforementioned entities in connection with Mark Richards' application for employment, employment compensation, job performance, discipline, and/or termination; all documents concerning Mark Richards not specifically referred to herein.

414204

3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

C.A. No. 05-30061-MAP

MARK A. RICHARDS,           )
          Plaintiff         )
VS.                         )
                            )
RIVER VALLEY COUNSELING CENTER, )
INC., VALLEY HEALTH SYSTEMS, INC.,)
DAVID G. MATTOCKS AND DONNA VIENS,)
          Defendants        )

DEPOSITION OF JEFFREY KASSIS, taken before Debra Vance, Notary Public Stenographer, pursuant to the provisions of Massachusetts Rules of Civil Procedure 30(b)(6), at the offices of ROBINSON DONOVAN, P.C., 1500 Main Street, Springfield, Massachusetts on January 31, 2006, commencing at 12:00 p.m.

APPEARANCES: (See Page 2)

Debra A. Vance
Notary Public Stenographer

---

INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---------|--------|-------|----------|---------|
| Jeffrey Kassis | *4 | | | |

* By Mr. Sikorski

EXHIBITS:                                                    PAGE:

Exhibit 1, re-notice of taking deposition....5
Exhibit 2, memo to Mr. Eagle 4/29/04.........15

---

2

FOR THE PLAINTIFF:

ROBINSON DONOVAN, P.C.
1500 Main Street
Springfield, Massachusetts 01115
413-732-2301
          BY: JOHN C. SIKORSKI, ESQ.

FOR RIVER VALLEY COUNSELING CENTER:

BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts 01115
413-781-2820
          BY: MARY J. KENNEDY, ESQ.

FOR DAVID MATTOCKS:

SKOLER, ABBOTT & PRESSER, P.C.
1414 Main Street, Suite 2000
Springfield, Massachusetts 01144
413-737-4753
          BY: MARY LOU FABBO, ESQ.

---

4

STIPULATIONS

It is agreed by and between the parties that all objections, except objections as to the form of the questions, and all motions to strike unresponsive answers are reserved and may be raised at the time of trial for the first time.

It is further agreed by and between the parties that the sealing and the notification to all parties of the receipt of the original deposition transcript is hereby waived.

JEFFREY KASSIS, Deponent, having been satisfactorily identified and duly sworn, deposes and states as follows:

DIRECT EXAMINATION BY MR. SIKORSKI:

Q. This is the 30(b)(6) deposition of Defendant, River Valley Counseling Center, and the first person who's been designated as a deponent is Mr. Kassis.

I ask, Mr. Kassis, please state your

5

1  name, spell your last name for the record,
2  please, sir.
3      A.   It's Jeffrey Paul Kassis, last name
4  is K-A-S-S-I-S.
5      Q.   And were you just deposed in your
6  individual capacity, sir?
7      A.   I'm confused by the question.
8      Q.   Did you just finish your deposition?
9      A.   Yes.
10          MR. SIKORSKI:   And I'm going to have
11  this marked as Exhibit 1.
12          (Exhibit 1 marked)
13      Q.   (By Mr. Sikorski) I'm going to
14  represent to you, Mr. Kassis, that Exhibit 1 is
15  the re-notice of taking a 30(b)(6) deposition of
16  River Valley Counseling Center and ask you or
17  your counsel to indicate which items on Exhibit A
18  you are being designated to testify about.
19          MS. KENNEDY:    For the record,
20  Mr. Kassis has been designated with respect
21  to subject areas on Exhibit A 1, 4, and 6.
22      Q.   (By Mr. Sikorski) And, Mr. Kassis,
23  Exhibit B of Exhibit 1 calls for you to bring
24  additional documents with you.  Have you brought

6

1  any?
2      A.   I haven't.
3          MS. KENNEDY:    For the record again,
4  I believe I sent you a letter earlier this
5  week addressing the document production in
6  Exhibit B to the re-notice of the
7  deposition of River Valley Counseling
8  Center.
9          MR. SIKORSKI:   Yes, you did.  I did
10  receive that, thank you.
11          I assume that this deponent will
12  want to read and sign this portion of the
13  deposition?
14          MS. KENNEDY:    Yes, please.
15          MR. SIKORSKI:   Otherwise, usual
16  stipulations, Counsel?
17          MS. FABBO:   Yes.
18          MS. KENNEDY:    Yes.
19      Q.   (By Mr. Sikorski) Mr. Kassis, what did
20  you do to prepare yourself to be a 30(b)(6)
21  deponent on Items 1, 4, and 6?
22      A.   I met with the lawyer, Mary Jo
23  Kennedy.
24      Q.   And I don't want to hear anything

7

1  about what Ms. Kennedy and you discussed.  I
2  understand you met with Ms. Kennedy.  Did you do
3  anything else to prepare yourself to be a
4  30(b)(6) deponent?
5      A.   No.
6      Q.   Did you interview anyone?
7      A.   No, I didn't.
8      Q.   Did you review any documents?
9      A.   Just this document itself.
10      Q.   The notice.  Did you review
11  Ms. Viens' deposition transcript, for example?
12      A.   No.
13      Q.   Did you talk to Mr. Brian Duke?
14      A.   No.
15      Q.   Did you talk to David Mattocks?
16      A.   No.
17      Q.   Did you talk to Jeffrey Eagle?
18      A.   No.
19      Q.   Did you review any documents of
20  Health Enhancement Services, Inc.?
21      A.   I didn't.
22      Q.   Did you review any documents created
23  by Jeff Eagle or anyone else associated with
24  Health Enhancement Services, Inc.?

8

1      A.   No, I didn't.
2      Q.   Did you review Mr. Mattocks' resume?
3      A.   No, I didn't.
4          You said any documents, right, was
5  the question?
6      Q.   Yes.
7      A.   I did review Mark's performance eval.
8  and my own.
9      Q.   And was that your performance
10  evaluation that Mr. Mattocks did for you?
11      A.   Yes.  I reviewed that and I reviewed
12  Mark's, the ones I gave Mark.
13      Q.   When was the last time you gave one
14  to Mark?
15      A.   I think it was 1991.
16      Q.   And did you review the --
17          MS. KENNEDY:    '91 you said?
18          THE WITNESS:    I'm sorry, 2001.
19      Q.   (By Mr. Sikorski) The review that
20  Mr. Mattocks gave you just a couple days after
21  terminating Mr. Richards?
22      A.   Yes.  I believe it was the 8th.
23      Q.   Did you sit down with Mr. Mattocks
24  and review the evaluation he gave you on

**Page 9**

```
 1   November 8?
 2           MS. KENNEDY:  Again, objection to
 3   the extent that it is outside of the scope
 4   of the areas he's designated.  Go ahead and
 5   answer, but I'm objecting just for the
 6   record.
 7           THE WITNESS:  Yes, I did.
 8       Q.  (By Mr. Sikorski) Did you review
 9   records relating to the financial performance of
10   the psychiatric day treatment program under
11   Mr. Richards' supervision prior to today?
12       A.  Yes, I did.  I did that with -- can I
13   say this?
14           MS. KENNEDY:  He asked you whether
15   you reviewed them.
16           THE WITNESS:  Yes, I did.
17       Q.  (By Mr. Sikorski) What financial
18   records did you review?
19       A.  Basically the -- how the program did
20   over the last three or four years.
21       Q.  When you say "program," that's the
22   psychiatric day treatment program?
23       A.  Yes.
24       Q.  Under Mr. Richards' supervision,
```

**Page 11**

```
 1           Go ahead and answer.
 2           THE WITNESS:  It performed well.
 3       Q.  (By Mr. Sikorski) How did it perform
 4   vis-a-vis other programs operated by River Valley
 5   Counseling Center?
 6           MS. KENNEDY:  Same objection.
 7           THE WITNESS:  It was a high
 8   performer, a very high performer.
 9       Q.  (By Mr. Sikorski) In the three years
10   before Mr. Richards' termination, were there any
11   issues noted with Mr. Richards' job performance?
12       A.  There were none noted.
13       Q.  And any disciplinary issues?
14       A.  There were none.
15       Q.  What was the reason why River Valley
16   Counseling Center terminated Mark Richards?
17       A.  There was a financial analysis that
18   the basic structure of the agency, the rate
19   structure could be sustained with a savings of
20   his position, the amount of money that was paid
21   to him, that would contribute to the overall
22   financial benefit of the agency.
23       Q.  When you say "financial analysis," is
24   that a financial analysis done by someone --
```

**Page 10**

```
 1   correct?
 2       A.  Yes.  I looked at that and for the
 3   whole year because it was continued after Mark
 4   left.
 5       Q.  And that's the fiscal year.  It goes
 6   from 7/1 to 6/30, correct?
 7       A.  Yes.
 8       Q.  So the fiscal year 2005 financial
 9   records would reflect financial performance from
10   7/1/04 to 6/30/05, correct?
11       A.  For that fiscal year 2004, 2005, yes.
12       Q.  And Mr. Richards' last day of
13   employment was about November 5, 2004, correct?
14       A.  Approximately, yes.
15       Q.  How did the psychiatric day treatment
16   program perform financially under Mr. Richards'
17   leadership?
18           MS. KENNEDY:  Objection.  I'm just
19   objecting on the grounds that it's outside
20   of the designated scope of the 30(6)(b)
21   designation, but go ahead and answer.
22           MR. SIKORSKI:  That's part of the
23   job performance of Mr. Richards.
24           MS. KENNEDY:  That's my objection.
```

**Page 12**

```
 1       A.  David Mattocks --
 2           MS. KENNEDY:  Let him finish his
 3   question.
 4       Q.  (By Mr. Sikorski) -- on behalf of
 5   River Valley Counseling Center?
 6       A.  Yes.
 7       Q.  Who did that financial analysis?
 8       A.  David Mattocks.
 9       Q.  Was it one analysis or more than one
10   analysis, to your knowledge?
11       A.  I'm unclear.
12       Q.  Was the financial analysis in
13   writing?
14       A.  I never saw anything anywhere in
15   writing.
16       Q.  Any documents at all referring to or
17   supporting or consisting of this financial
18   analysis?
19       A.  I never saw it.
20       Q.  As the 30(b)(6) deponent, do you
21   know --
22       A.  I don't believe --
23           MS. KENNEDY:  Let him ask his
24   question.
```

13

1  Q. (By Mr. Sikorski) -- if there was any
2  financial analysis in writing or any document
3  relating to the financial analysis?
4  A. I, as a representative of River
5  Valley Counseling Center, know of no documents
6  that exist.
7  Q. You used the term "rate structure
8  sustained." What do you mean by that?
9  A. Rate structure sustained is that
10 there is rates from the payers that is a very
11 favorable rate structure in terms of what the
12 agency pulls in for its services. And it
13 contributes to the success of the program.
14 Q. What do you mean when you say rate
15 structure could be sustained?
16 A. That means that the rate structure
17 was going to be kept because these are existing
18 contracts we have with the existing payers.
19 Q. And did River Valley Counseling
20 Center terminate Mr. Richards as part of a group
21 of terminations designed to save money?
22 A. There was a group of terminations
23 that existed over a two-year period that began
24 back in 2002. So if your time frame is over

14

1  those 24 months, there was a series of people in
2  sites and exchanges that were all made to
3  consolidate to improve the financial position.
4  Q. Who made the decision to terminate
5  Mr. Richards?
6  A. David Mattocks did.
7  Q. And did David Mattocks do a financial
8  analysis of other terminations that could be done
9  to improve the finances of River Valley
10 Counseling Center?
11 A. There is internally within 319, there
12 was a -- they looked at that structure within 319
13 which is a -- it contributes to the overhead
14 expenses. They were looking at that
15 simultaneously, David Mattocks was.
16 Q. Did David Mattocks do a financial
17 analysis of any other termination while he was
18 executive director?
19 A. There was an analysis of that, of the
20 319. I don't remember anything in writing.
21 Q. Do you remember any specific figures
22 that were tracked?
23 A. No, I don't remember.
24 Q. Prior to Mark Richards' termination,

15

1  did David Mattocks terminate anyone else for
2  financial reasons?
3  A. I'm unclear whether that happened. I
4  don't remember.
5  Q. After Mr. Richards' termination, was
6  anyone else terminated by Mr. Mattocks for
7  financial reasons?
8  A. Not that I know of. I don't believe
9  so under any clinical programs.
10 Q. What work or other assistance did
11 Jeff Eagle supply concerning or related to David
12 Mattocks?
13 A. I don't know directly what work he
14 provided.
15 MR. SIKORSKI: May I have this
16 marked as Exhibit 2.
17 (Exhibit 2 marked)
18 Q. (By Mr. Sikorski) Have you had a
19 chance to review Exhibit 2?
20 A. I have.
21 Q. Have you seen it before today?
22 A. I haven't.
23 Q. Have not?
24 A. I have not seen this.

16

1  Q. Do you know if River Valley
2  Counseling Center ever received an assessment of
3  Mr. Mattocks' ability to develop a strategic
4  business plan and implement the same from Jeff
5  Eagle?
6  A. I don't remember any such assessment.
7  Q. I'm asking as the 30(b)(6) deponent.
8  Do you know if River Valley Counseling Center
9  ever received assessment of Mr. Mattocks' ability
10 to develop a strategic business plan and
11 implement the same from Jeff Eagle?
12 A. I'm unclear.
13 Q. Do you know if Jeff Eagle ever
14 assessed Mr. Mattocks' energy level?
15 A. Again, I'm unclear.
16 Q. Do you know if anyone associated with
17 the Health Enhancement Services, Inc. did any
18 work concerning or related to David Mattocks?
19 MS. KENNEDY: Objection to the form.
20 Go ahead and answer.
21 THE WITNESS: The only thing I knew
22 is that there was -- and I heard this
23 indirectly, not directly -- that there was
24 a phone conversation, something was

19

```
1        verified. But I never knew any specifics
2        about what that was.
3            Q.   (By Mr. Sikorski) As a 30(b)(6)
4        deponent, did you make any inquiries as to topic
5        No. 4 before today, other than meeting with your
6        counsel?
7            A.   No, I haven't.
8            Q.   So you didn't call Mr. Eagle and ask
9        him what he did?
10           A.   No, I didn't.
11           Q.   You didn't call anybody at Health
12       Enhancement Services, Inc. and ask them what they
13       did?
14           A.   No, I didn't.
15           Q.   Did you make any efforts to determine
16       if anyone at River Valley Counseling Center knew
17       that Mark Richards had treatment for skin cancer
18       prior to his termination?
19               MS. KENNEDY:   Objection to the form
20           of the question in that it's outside the
21           scope of a 30(b)(6), but go ahead and
22           answer.
23               THE WITNESS:   I didn't know that
24           Mark had skin cancer. Consequently I never
```

20

```
1            A.   No, I haven't.
2            Q.   Who employed David Mattocks?
3            A.   I refer to it as Valley Health
4        Systems.
5            Q.   Other than Mark Richards, did anyone
6        complain to River Valley Counseling Center that
7        Mr. Mattocks had discriminated against them?
8                MS. KENNEDY:   Objection to the form.
9            Go ahead and answer. And again, the second
10           objection is that it's outside the scope of
11           the 30(b)(6) deposition notice and what
12           Mr. Kassis has been designated to testify
13           on. Go ahead and answer.
14               THE WITNESS:   Could you give your
15           definition of discrimination? I'm unclear.
16               MS. KENNEDY:   Can you rephrase the
17           question?
18               THE WITNESS:   I'm still unclear of
19           what he means. I understand the question.
20           I just don't know what he means by
21           discrimination. It's a broad term. I
22           don't know what it means.
23           Q.   (By Mr. Sikorski) You're aware that
24       Mr. Richards has brought a claim of
```

18

```
1        made inquiries.
2            Q.   (By Mr. Sikorski) After Mark Richards
3        was terminated, who replaced him as the director
4        of the psychiatric day treatment program?
5            A.   I did.
6            Q.   And after Mark Richards was
7        terminated, who took over his responsibilities
8        that he had formerly done as the director of the
9        psychiatric day treatment program?
10           A.   Those responsibilities were mine.
11           Q.   Did anyone other than you take over
12       those responsibilities?
13           A.   The responsibilities were delegated
14       to other people in leadership positions within
15       the program.
16           Q.   Who were those other people?
17           A.   David Avakian.
18           Q.   Anyone else?
19           A.   And Susan informally.
20           Q.   Just for the record, Susan's last
21       name?
22           A.   Levitt.
23           Q.   Can you spell it?
24           A.   L-E-V-I-T-T.
```

```
1            Q.   Prior to Mr. Richards' termination,
2        what was Ms. Levitt's position at River Valley
3        Counseling Center?
4            A.   She was an ongoing -- she was a
5        counselor within the program and she remained a
6        counselor. I'm talking about an informal
7        leadership not a formal leadership.
8            Q.   Did she receive any compensation for
9        this leadership role?
10           A.   No.
11           Q.   Prior to today, did you review
12       Mr. Mattocks' personnel file?
13           A.   No, I haven't.
14           Q.   Did you review his application for
15       employment?
16           A.   No, I haven't.
17           Q.   Did you review any records related to
18       his compensation?
19           A.   No, I haven't.
20           Q.   Did you review any records related to
21       his job performance?
22           A.   No, I haven't.
23           Q.   Did you review any records related to
24       discipline, termination, or resignation?
```

## Page 21

 1  discrimination on the basis of age and disability
 2  against Mr. Mattocks, correct?
 3      A.   Yes.
 4      Q.   Are you aware of any other employee
 5  that has brought a claim of illegal
 6  discrimination either formally or informally
 7  against Mr. Mattocks?
 8      A.   I'm not aware of any.
 9      Q.   Are you aware of anyone who has
10  complained informally that David Mattocks
11  discriminated against them?
12           MS. KENNEDY:   Again, same objection,
13      outside the scope of the 30(b)(6) but go
14      ahead and answer.
15           THE WITNESS:   Um, there was no
16      person -- no discrimination, there was no
17      discrimination.  But at times, certainly
18      him being a new person, some tension.
19      Q.   (By Mr. Sikorski) And what do you mean
20  by "some tension"?
21      A.   Um, program directors, you know,
22  going through ups and downs about where do I --
23  where do I stand with the person, the CEO.  There
24  was -- in my role as being the clinical director

## Page 22

 1  there was some other managers who went through
 2  some personal issues around he's new, where do I
 3  stand, and am I being accepted and all that.
 4      Q.   What is River Valley Counseling
 5  Center's understanding of the reason why David
 6  Mattocks resigned?
 7           MS. KENNEDY:   Objection to the form
 8      of the question.
 9      Q.   (By Mr. Sikorski) Let me rephrase it.
10  Was Mr. Mattocks terminated from
11  employment?
12           MS. KENNEDY:   Objection to the form
13      of the question.
14           THE WITNESS:   I'm not clear about
15      that.  I'm unclear.
16      Q.   (By Mr. Sikorski) Did Mr. Mattocks
17  resign?
18      A.   I'm unclear about that.
19      Q.   What steps did you take to ascertain
20  the circumstances surrounding Mr. Mattocks'
21  termination and/or resignation?
22      A.   Could you repeat the question again?
23      Q.   What steps did you take to ascertain
24  the circumstances surrounding David Mattocks'

## Page 23

 1  termination and/or resignation, other than
 2  meeting with Ms. Kennedy and what she told you?
 3  I don't want to know that.
 4      A.   Can I have a minute?
 5           MR. SIKORSKI:   Sure.  Off the
 6      record.
 7           (Off record discussion)
 8           MR. SIKORSKI:   Back on the record.
 9           (The last question was read.)
10           THE WITNESS:   Other than meeting
11      with Ms. Kennedy, I did nothing to
12      ascertain.
13      Q.   (By Mr. Sikorski) So you can't tell us
14  today whether Mr. Mattocks was terminated or
15  resigned, correct?
16      A.   I'm unclear.
17      Q.   Did you speak with anyone at H-C
18  Management Services about Mr. Mattocks's
19  application for employment, employment
20  compensation, job performance, discipline,
21  termination, and/or resignation before today?
22      A.   No.
23      Q.   Did you speak with anyone at Valley
24  Health Systems or any corporation or entity

## Page 24

 1  associated or affiliated with it regarding
 2  Mr. Mattocks' application for employment,
 3  employment compensation, job performance,
 4  discipline, termination, and/or resignation?
 5      A.   Just say that again.
 6           MR. SIKORSKI:   Would you read that
 7      back.
 8           (The last question was read.)
 9           THE WITNESS:   No, I didn't.
10      Q.   (By Mr. Sikorski) Did you speak with
11  anyone at H-C Management Services before today
12  regarding Mark Richards' application for
13  employment, employment compensation, job
14  performance, discipline, and/or termination?
15           MS. KENNEDY:   Yes or no.
16           THE WITNESS:   Yes.  Job performance
17      like 2001 I talked to people about his job
18      performance.  The job performance area,
19      yes, definitely.
20      Q.   (By Mr. Sikorski) In order to prepare
21  for your deposition today?
22      A.   No.  I'm confused.
23           MS. KENNEDY:   Would you read that
24      question back to Mr. Kassis.

25

```
 1              (The last question was read.)
 2        THE WITNESS:  As applied to what?
 3   Your question is confusing.
 4        Q.   (By Mr. Sikorski) That's fine.  I'll
 5   rephrase it.
 6              In order to prepare for your
 7   deposition -- strike that.  Let me rephrase it.
 8              In order to prepare for your role as
 9   30(b)(6) deponent, did you speak with anyone at
10   H-C Management Services regarding Mark Richards'
11   application for employment, employment
12   compensation, job performance, discipline, and/or
13   termination?
14        A.   No, I didn't.
15        Q.   In order to prepare for your role as
16   a 30(b)(6) deponent today, did you speak with
17   anyone at Valley Health Systems or any
18   corporation or entity associated with it
19   regarding Mark Richards' application for
20   employment, employment compensation, job
21   performance, discipline, and/or termination?
22        A.   No, I didn't.
23        Q.   Did you review Mr. Porten's
24   deponent transcript before today?
```

*Accurate Court Reporting*  
1500 Main Street, Suite 1412  
Springfield, MA 01115  
413-747-1806

27

```
 1   took the steps necessary to be an
 2   appropriate 30(b)(6) deponent as to Items
 3   1, 4, and 6 of Exhibit 1.
 4        MS. KENNEDY:  I'm going to object.
 5   The deponent was asked questions of him,
 6   what he did to prepare.  It's not the
 7   requirement here.  We are here to designate
 8   someone with knowledge according to the
 9   30(b)(6) deposition rule.  That has been
10   done.
11        Mr. Sikorski has asked questions of
12   that witness, and I think we have satisfied
13   our obligation as River Valley Counseling
14   Center, Inc. to produce people with
15   knowledge regarding the subject areas of 1,
16   4, and 6.  We know there's other areas to
17   be going into by other witnesses.
18        MR. SIKORSKI:  Do you have any
19   questions?
20        MS. FABBO:  I have no questions.
21        (Deposition concluded at 12:32 p.m.)
22
23
24
```

*Accurate Court Reporting*  
1500 Main Street, Suite 1412  
Springfield, MA 01115  
413-747-1806

26

```
 1        A.   No, I didn't.
 2        Q.   Did you review Donna Viens'
 3   transcript prior to today?
 4        A.   No.
 5        Q.   Did you review the Answers to
 6   Interrogatories of Mr. Mattocks before today?
 7        A.   No, I didn't.
 8        Q.   Or the Answers to Interrogatories of
 9   Ms. Viens?
10        A.   No, I didn't.
11        Q.   Or the Answers to Interrogatories of
12   Valley Health Systems?
13        A.   No, I didn't.
14        Q.   Or River Valley Counseling Center,
15   Inc.?
16        A.   No, I didn't.
17        Q.   Or the response to request for
18   production of documents issued to those entities
19   by Mr. Richards and his counsel?
20        A.   No, I didn't.
21        MR. SIKORSKI:  I have no further
22   questions of this witness at this time.
23   I'm going to suspend the deposition because
24   it's unclear to me whether this deponent
```

*Accurate Court Reporting*  
1500 Main Street, Suite 1412  
Springfield, MA 01115  
413-747-1806

28

```
 1             I, Debra A. Vance, a Notary Public within
 2   and for the Commonwealth of Massachusetts at large,
 3   do certify that pursuant to notice, there came
 4   before me on January 31, 2006, at the offices of
 5   ROBINSON DONOVAN, P.C., 1500 Main Street,
 6   Springfield, Massachusetts, 01115, the following
 7   person, to wit:  JEFFREY KASSIS, who was duly sworn
 8   to testify to the truth and nothing but the truth as
 9   to his knowledge touching and concerning the matters
10   in controversy in this case; that he was thereupon
11   examined upon his oath and said examination reduced
12   to writing by me; and that the deposition is a true
13   record of the testimony given by the witness, to the
14   best of my knowledge and ability.
15             I further certify that I am not a relative
16   or employee of counsel or attorney for any of the
17   parties, nor a relative or employee of such parties,
18   nor am I financially interested in the outcome of
19   the action.
20   WITNESS MY HAND, this 31st day of January, 2006.
21
22                       _____
                              Debra A. Vance
23   My Commission Expires:
24   April 26, 2007
```

*Accurate Court Reporting*  
1500 Main Street, Suite 1412  
Springfield, MA 01115  
413-747-1806

```
                    3
```

```
           UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MASSACHUSETTS


                              C.A. No. 05-30061-MAP

    MARK A. RICHARDS,              )
              Plaintiff            )
    VS.                            )
                                   )
    RIVER VALLEY COUNSELING CENTER,)
    INC., VALLEY HEALTH SYSTEMS, INC.,)
    DAVID G. MATTOCKS AND DONNA VIENS,)
              Defendants           )


           DEPOSITION OF MATTHEW HAAS, taken
    before Debra Vance, Notary Public Stenographer,
    pursuant to the provisions of Massachusetts Rules
    of Civil Procedure 30(b)(6), at the offices of
    ROBINSON DONOVAN, P.C., 1500 Main Street,
    Springfield, Massachusetts on January 31, 2006,
    commencing at 2:00 p.m.


    APPEARANCES:  (See Page 2)


                    Debra A. Vance
                Notary Public Stenographer
```

---

Page 3 — INDEX

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Matthew Haas | *4 | | | |

* By Mr. Sikorski

EXHIBITS:                                      PAGE:

Exhibit 3, Interrogatories...................12

---

Page 2

```
FOR THE PLAINTIFF:

ROBINSON DONOVAN, P.C.
1500 Main Street
Springfield, Massachusetts  01115
413-732-2301
          BY:  JOHN C. SIKORSKI, ESQ.

FOR RIVER VALLEY COUNSELING CENTER:

BULKLEY, RICHARDSON AND GELINAS, LLP
1500 Main Street, Suite 2700
Springfield, Massachusetts  01115
413-781-2820
          BY:  MARY J. KENNEDY, ESQ.

FOR DAVID MATTOCKS:

SKOLER, ABBOTT & PRESSER, P.C.
1414 Main Street, Suite 2000
Springfield, Massachusetts  01144
413-737-4753
          BY:  MARY LOU FABBO, ESQ.
```

---

Page 4

STIPULATIONS

It is agreed by and between the parties that all objections, except objections as to the form of the questions, and all motions to strike unresponsive answers are reserved and may be raised at the time of trial for the first time.

It is further agreed by and between the parties that the sealing and the notification to all parties of the receipt of the original deposition transcript is hereby waived.

MATTHEW HAAS, Deponent, having been satisfactorily identified and duly sworn, deposes and states as follows:

DIRECT EXAMINATION BY MR. SIKORSKI:

Q. Mr. Haas, will you please state your name and spell your last name for the record?

A. Matthew Hass, H-A-A-S.

MR. SIKORSKI: I assume that Mr. Haas will want to read and sign his

**Page 5**

1  deposition?
2              MS. KENNEDY:   Yes, please.
3              MR. SIKORSKI:   And otherwise the
4  usual stipulations, Counsel?
5              MS. FABBO:   Yes.
6              MS. KENNEDY:   Yes.
7     Q.    (By Mr. Sikorski)  Mr. Haas, I'm going
8  to show you what's already been marked as Exhibit
9  1 in the 30(b)(6) deposition and ask if you've
10 been designated as representative of River Valley
11 Counseling Center to respond to some of the
12 topics of Exhibit A in Exhibit 1?
13    A.    Yes, I have.
14    Q.    And what topics have you been so
15 designated?
16    A.    You can remind me.  I believe it was
17 2, 3, 6.
18             MS. KENNEDY:   Actually, 2, 3, 5, and
19 7.
20             THE WITNESS:   2, 3, 5, and 7.
21    Q.    (By Mr. Sikorski)  And, Mr. Haas, what
22 have you done today to prepare for your role as a
23 30(b)(6) deponent?
24    A.    I have made a review of the H-C

**Page 7**

1  Medical Center and also executive director of
2  River Valley Counseling Center.
3     Q.    And when did you become the executive
4  director of River Valley?
5     A.    Officially July 11, '05.  And in
6  terms of really taking on the duties, it was
7  really more the beginning of September.
8     Q.    And before you took over those duties
9  in the beginning of September, who was carrying
10 out the responsibilities as the executive
11 director of River Valley?
12    A.    The acting director was Maryann
13 Pomaltier while Mr. Mattocks was on his leave.
14    Q.    And then after Mr. Mattocks didn't
15 return, she continued until you took over the
16 responsibilities?
17    A.    That happened pretty quickly.  I was
18 asked whether this was something I would consider
19 sometime earlier in the summer, maybe it was June
20 or something, when Mr. Mattocks went on leave and
21 was told there was a chance he may not come back,
22 that that wasn't known.  And if he decided not to
23 come back or if that is what ended up happening,
24 you know, would I be willing to consider this.

**Page 6**

1  Management agreement and also had a meeting with
2  my attorney last week.
3     Q.    I don't want to know what you spoke
4  to your attorney about.  But other than reviewing
5  the H-C Management agreement and the meeting with
6  counsel, have you done anything else?
7     A.    Not apart from the duties of my job.
8     Q.    Did you review any documents other
9  than the H-C Management agreement?
10    A.    Um, documents that I would have come
11 across in the course of my work.  I'm trying to
12 think here.  When we were asked to produce
13 documents, I was part of looking those over
14 briefly.  I didn't keep copies or study them in
15 great length, for instance, the personnel records
16 that were asked for some of the people, that kind
17 of thing.
18    Q.    Did you review the deposition
19 transcript of Mr. Porten?
20    A.    No, I did not.  I haven't see any
21 deposition transcripts.
22    Q.    What is your current position?
23    A.    I am -- I have a dual role.  I'm
24 director of Behavioral Health Services at Holyoke

**Page 8**

1            So I gave it some thought and made
2  some recommendations about some extra help that
3  might be needed at the hospital to manage things
4  there.  And so I think I'm not privy to all what
5  happened on the other end of it, but my
6  impression was that very shortly after David
7  Mattocks said he was not coming back or after
8  that was learned I was asked and named in this
9  new role.
10    Q.    And who hired you into this role?
11             MS. KENNEDY:   I'm going to object to
12    this line of questioning because it's
13    outside of the 30(b)(6) scope, but go ahead
14    and answer the question.
15             THE WITNESS:   I don't know if hire
16    is quite the right word, but Hank Porten is
17    the person I was talking with.
18    Q.    (By Mr. Sikorski)  How long have you
19 been the director of Behavioral Health?
20    A.    For about two years.  I've been an
21 employee of the hospital for 13 years but
22 director of Behavioral Health for about two
23 years.
24    Q.    And what is the relationship between

13

1   attorney-client communications I would
2   instruct you not to answer. If you can
3   answer it without revealing attorney-client
4   privilege and information, please go ahead
5   and do so.
6        THE WITNESS: Um, I would like to be
7   able to refer to the written response to
8   that particular allegation if you can
9   direct me to which one that is.
10       Q.   (By Mr. Sikorski) Do you just have a
11  layperson's understanding of what the defense is
12  to the Family Medical Leave Act claim?
13       A.   I may want to confer with you about
14  what the distinction is between my layperson's
15  understanding and what's attorney-client
16  privilege. Because virtually all of my
17  discussions about this have been with counsel.
18       Q.   Fine.
19       (A recess was taken)
20       MR. SIKORSKI: Can you read the last
21  question.
22       (The last question was read.)
23       THE WITNESS: My understanding is
24  that, as it was laid out in the

14

1   interrogatories, the reason for the
2   termination was due to the elimination of
3   the position and that Mr. Richards' status
4   under the Family Medical Leave Act was not
5   a consideration in the decision to
6   terminate the position.
7        Q.   (By Mr. Sikorski) Do you have an
8   understanding of the defense of the age
9   discrimination complaint?
10       A.   The same essentially, that his age
11  was not a consideration in the decision to
12  eliminate the position, that it was a business
13  decision that was made.
14       Q.   And do you have an understanding of
15  the defense to the claims of disability
16  discrimination?
17       A.   The same, that actually, and this is
18  my sense, that as I recall -- because I was not
19  there. I can't obviously speak to any decision I
20  made. As I recall from conversation with Donna
21  Viens, that she was not aware of the disability
22  in terms of the skin cancer that is something
23  that I've heard spoken about.
24       Q.   Did you have a conversation with

15

1   Donna Viens about the issue of the skin cancer?
2        A.   When the question was raised I did,
3   and she said that was something she didn't know
4   about.
5        Q.   Did you ever discuss Mr. Richards'
6   claims of Mr. Mattocks?
7        A.   No.
8        Q.   So in order to prepare to be a
9   30(b)(6) deponent today, you didn't call
10  Mr. Mattocks and discuss this matter with him?
11       A.   No. Actually, to be more accurate, I
12  did have, before Mr. Mattocks left, when I had
13  gotten Mr. Richards' resignation letter I had
14  maybe two or three conversations, I think one,
15  maybe two meetings with Mr. Mattocks while he was
16  in his position.
17       And after I got the letter that Mark
18  wrote resigning from his position, I had a
19  conversation with Mr. Mattocks about something
20  else. I didn't call him about this, but I
21  mentioned to him that I had gotten that. And he
22  said something -- I didn't even know at that
23  point if he said anything about the position
24  being eliminated.

16

1   But when I saw in the paper that a
2   lawsuit had been filed, I think I might have
3   called him. I don't remember if I called him
4   about that or if we were talking about something
5   else. And he made a comment about, yeah, I
6   thought that might happen. It was like, you
7   know, a ten-second conversation. I have not had
8   any conversation with Mr. Mattocks actually since
9   I've been in my position at River Valley.
10       Q.   But to prepare for --
11       A.   Not to prepare for today or for any
12  other reason.
13       Q.   And this conversation about, yeah, I
14  thought this might have happened, that was after
15  there was an article in the paper about the
16  lawsuit?
17       A.   There was an article in the paper
18  about the lawsuit.
19       Q.   Did you say anything more to him in
20  that conversation?
21       A.   No.
22       Q.   Did you ask him why he thought this
23  might happen?
24       A.   No.