UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 05-30061-MAP

| | |
|---|---|
| MARK A. RICHARDS,<br>Plaintiff<br><br>vs.<br><br>RIVER VALLEY COUNSELING<br>CENTER, INC., VALLEY HEALTH<br>SYSTEMS, INC., DAVID G.<br>MATTOCKS AND DONNA VIENS,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) STATEMENT OF MATERIAL FACTS<br>NOT IN DISPUTE OF DEFENDANTS,<br>RIVER VALLEY COUNSELING<br>CENTER, INC., VALLEY HEALTH<br>SYSTEMS, INC., AND DONNA VIENS |

## I. Introduction

Pursuant to Local Rule 56.1, the defendants, River Valley Counseling Center, Inc. ("RVCC"), Valley Health Systems, Inc. ("VHS"), and Donna Viens ("Ms. Viens"), submit the following statement of material facts of record to which there is no genuine issue to be tried. As set forth in the accompanying Memorandum of Law in Support of Motion for Summary Judgment of Defendants, RVCC, VHS, and Ms. Viens, the undisputed facts related to the claims of the plaintiff, Mark A. Richards ("Plaintiff"), mandate summary judgment for RVCC, VHS, and Ms. Viens on all five counts in the Amended Complaint.

## II. Statement of Material Facts

A.  Background Regarding Plaintiff's Employment With RVCC

1.  RVCC provides psychiatric, social and medical services to the Springfield, Holyoke, and Chicopee communities.

2.  In the early 1990's, Plaintiff became an employee of RVCC, when RVCC took over the Highland Day Treatment Center in Springfield where Plaintiff was

employed as the Program Director. (Relevant portions of Plaintiff's deposition are attached as Exhibit A). (Exhibit A, p. 20).

3. RVCC employed the Plaintiff as its Program Director for its Psychiatric Day Treatment Program. (Complaint, ¶¶ 1, 8).

4. During the late 1990's, RVCC was having financial difficulties. (Exhibit A, p. 24).

5. In approximately 1997, Plaintiff became the Program Director for RVCC's Day Treatment Programs in Holyoke and in Springfield. (Exhibit A, p. 23).

6. As a result, RVCC terminated the employment of the former Program Director for the Day Treatment Program in Holyoke. (Exhibit A, p. 21).

7. For a period of time, Plaintiff was the Program Director for both programs as a cost savings by eliminating the redundancy of RVCC having two program directors for the day treatment programs. (Exhibit A, p. 25).

8. At some later date, RVCC stopped operating the Day Treatment Program in Springfield. (Exhibit A, pp. 25-26).

9. Plaintiff continued as the Program Director of RVCC's Psychiatric Day Treatment Program in Holyoke. (Exhibit A, pp. 25-26).

B. Plaintiff's Request for Intermittent FMLA leave in 2000

**CONFIDENTIAL**

**CONFIDENTIAL**

C.   RVCC's New Executive Director

16.   In the summer of 2004, David Mattocks ("Mr. Mattocks") was hired as the Executive Director of RVCC. (Relevant portions of Mr. Mattocks' deposition are attached as Exhibit C). (Exhibit C, p. 10).

17.   Mr. Mattocks was RVCC's Executive Director for approximately one year. (Exhibit C, p. 10).

18.   Plaintiff got along well with Mr. Mattocks. (Exhibit A, p. 230).

D.   RVCC's Relationship with H-C Management and VHS

19.   The sole member of RVCC is VHS. (Relevant portions of Mr. Porten's Individual deposition are attached as Exhibit D). (Exhibit D, p. 21).

20. The sole member of H-C Management Services, Inc. ("H-C Management") is VHS. (Exhibit D, p. 21) (Relevant portions of Mr. Porten's 30(b)(6) deposition are attached as Exhibit E). (Exhibit E, p. 13).

21. H-C Management employed certain members of the management team that work in various VHS affiliates. (Exhibit D, p. 21-22).

22. H-C Management employed Mr. Mattocks when he was RVCC's Executive Director. (Exhibit D, p. 17).

23. In consideration of a series of loans that VHS made to RVCC prior to 2004, H-C Management and RVCC entered into a management oversight agreement in which the Executive Director and Controller were employees of H-C Management. (Relevant portions of the deposition of Mr. Haas are attached as Exhibit F). (Exhibit F, p. 9; Exhibit D, p. 22).

24. RVCC paid a monthly management fee to H-C Management which included the salary of the Controller and Executive Director, as well as some management consultation time by H-C Management. (Exhibit F, pp. 9-10).

E. Hiring of Director of Human Resources at RVCC

25. In August 2004, RVCC hired Ms. Viens as its Director of Human Resources. (Exhibit A, p. 108) (Relevant portions of the deposition of Ms. Viens are attached as Exhibit G). (Exhibit G, p. 5).

26. Plaintiff had a good work relationship with Ms. Viens. (Exhibit A, pp. 111-112).

F.   Plaintiff's Request for Intermittent FMLA Leave in 2004

**CONFIDENTIAL**

29.   On August 30, 2004, Plaintiff requested intermittent FMLA leave to care for the medical needs of his daughter. (Exhibit A, p. 77, and Exhibit 10 thereto).

**CONFIDENTIAL**

31.   On September 3, 2004, Ms. Viens gave Plaintiff a Request for Leave of Absence form and Medical Certification form. (Exhibit 11 to Exhibit A).

**CONFIDENTIAL**

34.   On September 17, 2004, Ms. Viens approved Plaintiff's request for intermittent FMLA leave. (Exhibit A, p. 89 and Exhibit 14 thereto).

35. In the approval letter, Plaintiff was instructed to inform Mr. Mattocks when he was going on intermittent leave or using intermittent leave. (Exhibit 14 to Exhibit A).

36. Plaintiff's weekly time sheets did not contain anything specific about his use of intermittent family leave. (Exhibit A, p. 218).

37. Plaintiff did not provide Mr. Mattocks or the Human Resources Department with written documents indicating the hours that he took intermittent FMLA leave. (Exhibit A, p. 95).

38. Plaintiff did not tell Mr. Mattocks about every appointment and every time he was out on intermittent FMLA leave. (Exhibit A, p. 91).

39. Plaintiff told Mr. Mattocks that Plaintiff was out on intermittent FMLA leave when they had a scheduled meeting. (Exhibit A, p. 75 and Exhibit 9 thereto).

40. Plaintiff told Mr. Avakian and staff in RVCC's Day Treatment Program when he was out on intermittent FMLA leave. (Exhibit A, p. 91).

G. <u>Mr. Avakian's Promotion to Assistant Program Director</u>

41. In the late summer of 2004, Plaintiff spoke with Mr. Mattocks about increasing Mr. Avakian's salary because Mr. Avakian was looking for a job with higher wages elsewhere. (Exhibit A, pp. 99-100).

42. Plaintiff believed Mr. Avakian was a very valuable employee, who had been at the program for eighteen years. (Exhibit A, p. 100).

43. As a supervisor, Mr. Avakian was the only person who could step in for the Plaintiff. (Exhibit A, p. 101).

44.     Mr. Mattocks told Plaintiff that he was going ahead with the raise for Mr. Avakian and that Mr. Avakian would have a new position of Assistant Program Director. (Exhibit A, p. 103).

45.     Plaintiff did not disagree with Mr. Mattocks' decision to make Mr. Avakian the Assistant Program Director. (Exhibit A, p. 170).

46.     On September 16, 2004, Mr. Mattocks notified Mr. Avakian of the promotion to the new position of Assistant Director of Psychiatric Day Treatment Program. (Exhibit 16 to Exhibit A).

H.      Mr. Mattocks' Request that Plaintiff Attend Managers' Meetings

47.     In the Fall of 2004, Mr. Mattocks asked Plaintiff to attend a small group meeting of managers that was held early-mornings, approximately three days a week. (Exhibit A, pp. 73-74).

48.     Plaintiff told Mr. Mattocks that he had a daily meeting at his own program that overlapped with the small group meeting of managers and that sometimes it might be difficult for him to attend due to his daughter. (Exhibit A, pp. 75-76).

49.     Plaintiff asked Mr. Mattocks the purpose of the meeting, what his role would be, and if there was some other way he could be of assistance. (Exhibit A, p. 222).

50.     In response, Mr. Mattocks said that he was still working out the purposes of the meetings. (Exhibit A, p. 223).

51.     Mr. Mattocks did not tell Plaintiff that he had to attend those meetings. (Exhibit A, p. 224).

52.     Plaintiff did not ask Mr. Mattocks to schedule the meetings at some other time than in the morning. (Exhibit A, p. 222).

I.    Decision to Eliminate Plaintiff's Position

53.    Mr. Mattocks made the decision to eliminate Plaintiff's position. (Exhibit C, p. 11; Exhibit G, p. 11).

54.    Mr. Mattocks was under a charge from H-C Management and VHS to look at all positions within RVCC for their financial viability because RVCC had been operating under a significant deficit for many years and that, wherever possible, to make cost reduction measures. (Exhibit C, p. 12).

55.    Mr. Mattocks eliminated Plaintiff's position because his responsibilities had been subsumed by a subordinate and that the elimination of Plaintiff's salary would contribute to the financial success of RVCC. (Exhibit C, p. 12).

J.    Mr. Mattocks' Conversations with Mr. Porten and Ms. Kelleher Regarding the Decision to Eliminate a Position at RVCC

56.    Mr. Mattocks met on a regular basis with Mr. Porten, President of VHS, and talked in general about economic goals of RVCC and issues to improve on. (Exhibit D, p. 12).

57.    At a meeting Mr. Mattocks told Mr. Porten that there would be a reduction of positions at RVCC. (Exhibit D, p. 10; Exhibit C, pp. 40-41).

58.    Mr. Mattocks did not tell Mr. Porten a name associated with the reduction of positions. (Exhibit D, p. 10; Exhibit C, pp. 41).

59.    Mr. Porten suggested that Mr. Mattocks speak with human resources regarding the position elimination. (Exhibit C, pp. 41-42).

60.    Mary Kelleher ("Ms. Kelleher"), employed by H-C Management as its Vice President of Human Resources, provided human resources services to RVCC on a

8

consulting basis. (Relevent portions of the deposition of Ms. Kelleher are attached as Exhibit H). (Exhibit H, p. 5).

61. Mr. Mattocks and Ms. Viens spoke with Ms. Kelleher about a position elimination. (Exhibit H, p. 7) (Exhibit C, pp. 41-42).

62. Mr. Mattocks discussed offering severance to Plaintiff and the process in carrying out the termination of employment with Ms. Kelleher. (Exhibit H, pp. 7-8).

63. Ms. Kelleher was told that Plaintiff's intermittent leave was to take care of his daughter. (Exhibit H, p. 12).

64. Ms. Kelleher did not know the illness of Plaintiff's daughter. (Exhibit H, p. 13).

65. Ms. Kelleher was told that Plaintiff was not using intermittent FMLA leave. (Exhibit H, p. 10).

66. Ms. Kelleher did not know Plaintiff's age. (Exhibit H, p. 16).

67. Ms. Viens did not know Plaintiff was on intermittent FMLA leave. (Exhibit G, p. 17).

K.   November 4, 2004

68. On November 4, 2004, Plaintiff attended a large group meeting of RVCC managers. (Exhibit A, p. 121).

69. Mr. Mattocks told the group that Hank Porten, President of VHS, had agreed with him on topics pertaining to RVCC and changes to be made. (Exhibit A, p. 122).

70. After the large group meeting on November 4, 2004, Plaintiff had a meeting with Mr. Mattocks. (Exhibit A, p. 124).

9

71. Ms. Viens came into the meeting with Mr. Mattocks and Plaintiff. (Exhibit A, p. 125).

72. Mr. Mattocks told Plaintiff that one of the changes was the termination of Plaintiff's employment. (Exhibit A, p. 125).

73. Mr. Mattocks told Plaintiff that his termination of employment had nothing to do with his performance, but was for cost savings reasons. (Exhibit A, pp. 125, 130).

74. Mr. Mattocks gave Plaintiff a copy of a severance agreement. (Exhibit A, p. 126).

75. Mr. Mattocks told Plaintiff that Jeffrey Kassis ("Mr. Kassis"), with Mr. Avakian playing a role, would replace him. (Exhibit A, p. 126; Exhibit C, p. 17).

76. Plaintiff's date of birth is July 6, 1950. (Exhibit A, p. 5).

77. Mr. Mattocks' date of birth is January 18, 1950. (Defendant David G. Mattocks' Answers to Interrogatories Propounded by the Plaintiff, attached hereto as Exhibit I.)

78. Mr. Kassis' date of birth is February 22, 1951. (Relevant portions of Mr. Kassis' deposition are attached as Exhibit J). (Exhibit J, pp. 41-42).

79. Mr. Avakian's date of birth is October 6, 1959. (Exhibit B, p. 4).

80. Plaintiff said that he wanted a way to save face and to present his termination to the staff in a way that sounded like he was leaving to care for his daughter rather than being fired. (Exhibit A, p. 127).

81. Later that day, Plaintiff and Mr. Mattocks met with RVCC's Day Treatment staff present on that day. (Exhibit A, pp. 154-155).

82. Plaintiff told the staff that the reason he was leaving was because of his daughter being ill, that he was going to be home to take care of her, and that Administration decided that he should leave right away. (Exhibit A, p. 156).

83. Plaintiff sent out a memo to approximately fifteen people announcing that he was leaving the agency due to family illness. (Exhibit A, p. 163-164 and Exhibit 21 thereto).

84. On November 4, 2004, Plaintiff told two co-workers that Mr. Mattocks had terminated his employment and that Plaintiff did not expect it. (Exhibit A, p. 173).

L.   Plaintiff's Beliefs Regarding the Reasons for Termination of His Employment

85. Plaintiff believed that Mr. Mattocks believed that, by terminating Plaintiff's employment, RVCC would be saving Plaintiff's salary and that savings would speed up the loan payments to VHS. (Exhibit A, p. 183).

86. Plaintiff's belief that RVCC terminated his employment because he went out on intermittent FMLA leave was based on Plaintiff not being able to attend certain managers meetings, not being available when Mr. Mattocks sometimes called in the mornings, being told by Mr. Mattocks to have reliable back-up for billing in his absence, and that Ms. Viens told Plaintiff that she prevented an employee at her other job from going out on FMLA leave. (Exhibit A, pp. 181-182).

87. Plaintiff's belief that RVCC terminated his employment because he had an ill daughter was based on Mr. Mattocks' comments that Plaintiff was not around very much, that it was hard for Mr. Mattocks to schedule meetings with Plaintiff because he was home caring for his daughter; that both Mr. Mattocks and Ms. Viens were aware of his daughter's illness and knew Plaintiff was the primary caretaker to help with his

daughter's illness; and that his daughter's illness interfered at times with his ability to be at work in the mornings. (Exhibit A, pp. 148, 177-178).

88. Plaintiff believed that his relationship with Mr. Mattocks changed when, in October 2004, Plaintiff balked at attending a managers' meeting. (Exhibit A, p. 149).

89. Mr. Mattocks slowed down about dropping in at RVCC's Psychiatric Day Treatment Program to talk about various things that were going on in the agency.

90. Mr. Mattocks left a voice mail canceling a meeting that Plaintiff felt was not left in a way he would have picked it up prior to the meeting happening. (Exhibit A, pp. 149-150).

91. Plaintiff's belief that RVCC terminated his employment because of his age was based on the fact that Mr. Avakian, who was the primary leader in the position after he left the program, was about ten years younger than the Plaintiff. (Exhibit A, pp. 174-175).

M.    VHS

92. VHS did not set Mr. Mattocks' compensation, review his job performance, discipline him or terminate his employment. (Exhibit E, p. 12-13).

93. VHS did not oversee any of the personnel decisions made by Mr. Mattocks. (Exhibit E, p. 13).

94. VHS did not have any role regarding the evaluation of Plaintiff's performance. (Exhibit E, p. 15-16).

95. VHS did not have a role in the decision to terminate Plaintiff's employment. (Exhibit E, p. 16).

|  |  |
|---|---|
|  | The Defendants<br>RIVER VALLEY COUNSELING CENTER, INC.,<br>VALLEY HEALTH SYSTEMS, INC.,<br>AND DONNA VIENS<br>By Their Attorney: |
| Dated: May 12, 2006 | /s/ Mary J. Kennedy<br>Francis D. Dibble, Jr.<br>BBO No. 123220<br>Mary J. Kennedy<br>BBO No. 552345<br>Bulkley, Richardson and Gelinas, LLP<br>1500 Main Street, Suite 2700<br>P. O. Box 15507<br>Springfield, MA 01115-5507<br>Tel: (413) 272-6242<br>Fax: (413) 272-6803 |

Certificate of Service

I hereby certify that a true copy of the above document was served upon the attorney of record for each party, by electronic filing, on May 12, 2006.

/s/ Mary J. Kennedy
Mary J. Kennedy