UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK RICHARDS,

                              Plaintiff,

vs.

RIVER VALLEY COUNSELING
CENTER, INC., VALLEY HEALTH
SYSTEMS, INC., DAVID G.
MATTOCKS, and DONNA VIENS,

                              Defendants.

CIVIL ACTION NO. 05-30061-MAP

## DEFENDANT MATTOCKS' MEMORANDUM IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### I.    BACKGROUND

This case arises out of Plaintiff Mark Richards' November 4, 2004 separation from employment with River Valley Counseling Center, Inc. ("River Valley").  At all relevant times, River Valley was comprised of a Day Treatment Program (also referred to as a Partial Hospitalization Program), an AIDS Prevention and Treatment Program, and School-Based AIDS Education Awareness and Harm Reduction Programs.  Mr. Richards was employed as Program Director of River Valley's Day Treatment Program from 1997 through November 4, 2004, when Defendant David Mattocks eliminated Mr. Richards' position to reduce costs at River Valley.

**ORAL ARGUMENT REQUESTED**

Plaintiff's five-count Amended Complaint alleges a variety of legal theories against two corporations and two individuals.[1]  Specifically, Count I alleges a violation of the Family Medical Leave Act ("FMLA").  Counts II and III allege disability discrimination based on Plaintiff's association or relationship with an allegedly disabled person, his teenage daughter, in violation of the Americans with Disabilities Act ("ADA") and Mass. Gen. Laws ch. 151B, respectively.[2]  Counts IV and V allege age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Mass. Gen. Laws ch. 151B, respectively.  Although Mr. Mattocks is named as a Defendant to all counts, his employer at the relevant time, H-C Management, Inc., is not a party to this action.  (See Amended Complaint)  The undisputed facts demonstrate that Mr. Mattocks is entitled to Summary Judgment as a matter of law on all counts. Fed. R. Civ. P. 56.

In early summer 2004, Mr. Mattocks was hired to be the Executive Director of River Valley, although he was hired and employed by H-C Management Company, Inc., and not River Valley.  (Facts 6)  Mr. Mattocks' superiors instructed him to cut costs and increase revenue at River Valley as a whole.  Mr. Mattocks attempted to cut costs by a variety of means---from performing graphic design services himself that had been previously outsourced---to eliminating positions.  (Facts 38)  In the late summer and early fall of 2004, Mr. Richards, who reported to both Mr. Mattocks and another long-term employee, Jeffrey Kassis, River Valley's Clinical Director, strongly and successfully

---

[1] The Defendants River Valley Counseling Center, Inc., Valley Health Systems, Inc. and Donna Viens are represented by Bulkley, Richardson and Gelinas.  They do not join in this motion but are filing a separate Motion for Summary Judgment.

[2] Counts II and III also alleged that Defendants discriminated against Plaintiff based on an actual and/or perceived disability; however, on May 4, 2006, the parties filed a Stipulation of Dismissal with Prejudice of those aspects of Counts II and III.

advocated to Mr. Mattocks for a raise and promotion on behalf of his next-in-charge, Program Supervisor David Avakian.  Mr. Avakian, as described by Mr. Richards, was a great leader and Clinician and was able to fill Mr. Richards' role in his absence.  (Facts 19)  At some point in the fall of 2004, while still trying to cut costs any way possible, Mr. Mattocks considered eliminating Mr. Richards' position to save the expense of his salary.  Mr. Mattocks thought that Mr. Avakian could have day-to-day oversight for the program and Mr. Richards' other supervisor, Mr. Kassis, could take over clinical responsibility for the Program as he had experience overseeing its clinical aspects. After making some inquiries as to whether the restructuring would result in a violation of any regulations and concluding it would not, Mr. Mattocks informed Mr. Richards on November 4, 2004 that his position had been eliminated.  (Facts 30, 36)  Mr. Richards' duties were divided up as planned, and Mr. Mattocks continued to cut costs in River Valley until he resigned in 2005 due to his own illness.  (Facts 45)

## II.    LEGAL DISCUSSION

### A.    Defendant Mattocks is Entitled to Summary Judgment on Count II which Alleges Discrimination for Associating with a Disabled Person In Violation of the ADA.

#### 1.    Mr. Mattocks Does Not Have Individual Liability Under the ADA.

Mr. Richards has come forward with no evidence that supports an ADA claim against Mr. Mattocks in his individual capacity.  Neither the First Circuit nor the Supreme Court has decided the issue of whether a plaintiff suing under Title I of the ADA can maintain a suit against an individual in their personal capacity. The District Court for Massachusetts however, has held that only when a supervisor is more than a mere supervisor, but rather, the equivalent of the employer can he be held personally liable under the ADA.  *Oliveras-Sifre v. Department of Health*, 38 F.Supp.2d 91 (D. P.R.

1999), *aff'd in part* (1st Cir. 2000)("Our disposition of the substantive claims makes it unnecessary to consider whether the defendants could be held individually liable under the ADA....")  The Massachusetts U.S. District Court's decision is consistent with decisions of many other courts within the First Circuit that have rejected individual liability under the ADA.  *Anonymous v. Legal Serv. Corp.*, 932 F.Supp. 49, 50-51 (D.Puerto Rico 1996); *Miller v. CBC Companies, Inc.*, 908 F.Supp. 1054, 1065 (D.N.H.1995).   Mr. Richards has not come forward with any evidence that an alter ego theory should apply to Mr. Mattocks and, thus, summary judgment for him on such grounds is appropriate.

      2.  <u>Mr. Mattocks Did Not Violate the ADA.</u>

      Title I of the ADA protects employees from discrimination based on their known relationship or association with an individual with a known disability (the "association" provision).  42 U.S.C. § 12112(b)(4).  The association provision is not all encompassing. Before an individual can be held liable for violating its terms, an employee must come forward with evidence that the alleged wrongdoer knew both that the employee associated with someone and that that someone was disabled within the meaning of the ADA.  Further, it does not allow employees who are in a relationship with a disabled person to escape job eliminations, *see, e.g., Rogers v. International Marine Terminals, Inc.*, 87 F.3d 755 (5th Cir. 1996).  It also does not require an employer to reasonably accommodate the non-disabled person, *i.e.*, the employee.  The burden of proof is on the individual claiming discrimination to prove that the discrimination was in fact motivated by that person's relationship or association with a person with a disability. *See, e.g., Oliveras-Sifre v. Puerto Rico Dept. of Public Health*, 214 F.3d 23 (1st Cir.

2000). Plaintiff cannot meet his burden of demonstrating that Mr. Mattocks eliminated his job because of his association with his daughter.

The First Circuit has recognized that the ADA's association provision can be used to protect against three different employer actions: (1) taking action against an employee on the *unfounded* assumption that the employee will miss work to care for the disabled person; (2) terminating an employee who associates with a disabled person due to fear that the employee may contract the disabled person's disease; and (3) denying health benefits to an employee's disabled dependent but not to other dependents, even where the provision of benefits to the disabled dependent would result in increased health insurance costs for the employer. *Oliveras-Sifre*, 214 F.3d at 26 (emphasis added). Plaintiff has not come forward with any evidence suggesting that he was terminated as the result of Mr. Mattocks' fear that he would contract his daughter's illness. Nor has Plaintiff come forward with any evidence that Mr. Mattocks denied his daughter health benefits. Further, Mr. Richards' (highly disputed) contention, *i.e.*, that Mr. Mattocks believed that it was difficult to meet with him because he was in fact not around much because of his daughter and, therefore, terminated him, does not fit within the only remaining basis for liability under the association provision; to wit, taking adverse action based on unfounded assumptions that he would miss work to care for his daughter.

The *McDonnell Douglas* burden-shifting analysis is applicable to association cases where Plaintiff's have not alleged or presented direct evidence of discrimination. *Barker v. Int'l Paper Co.*, 993 F. Supp. 10, 14 (D. Me. 1998). To demonstrate a *prima facie* case of discrimination under the ADA for terminating an employee for associating

with a disabled person, Mr. Richards must come forward with admissible evidence that (1) he suffered an adverse employment action; (2) he was qualified for the job at the time the adverse employment action occurred; (3) he was known by his employer at the time to have a relationship or association with a disabled person; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Den Hartog v. Wasatch Academy,* 129 F.3d 1076 (10th Cir. 1997); *Malone v. Straus Enterprises, Inc.*, 2005 WL 1924708 *2 (W.D. Mo. 2005). Mr. Richards cannot establish a *prima facie* case.

First, the undisputed evidence demonstrates that Mr. Mattocks did not know that Mr. Richards' daughter was disabled within the meaning of the ADA. There is no evidence that Mr. Mattocks knew anything about Mr. Richards' daughter's health other than the fact that she had received a new diagnosis for a long-term condition that required Mr. Richards', (and others'), participation in her treatment. (Facts 8) There is absolutely no evidence from which it can be inferred that Mr. Mattocks was aware that she had a physical or mental impairment that substantially limited one or more major life activities. 42 U.S.C. § 12102(2). *See, e.g., Morisky v. Broward County*, 80 F.3d 445, 448 (11th Cir. 1996) (holding plaintiff's "vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice," and plaintiff, therefore, failed to establish *prima facie* case under ADA).[3] Thus, Mr. Richards has not met the required threshold showing that Mr. Mattocks knew that his daughter was

---

[3] Further, as a matter of law, the offer of Family Medical Leave or paid leave time off to take care of an ill family member is not enough to infer perception of disability. *See, e.g., Smith v. Hinkle Mfg.*, 2002 WL 1215607 *6 (6th Cir. 2002).

6

disabled.

Second, the undisputed evidence demonstrates that Mr. Mattocks did not have any discriminatory motive when selecting Mr. Richards' position for elimination. There was no impermissible consideration of Mr. Richards' daughter's alleged disability in Mr. Mattocks' decision to eliminate Mr. Richards' position. The association provision protects against only *unfounded* assumptions about how the relationship may impact the employee at work: It does not prevent employers from taking actions based on *actual* impact in the workplace of the employee's relationship with the disabled person. *See, e.g., Den Hartog v. Wasatch Academy,* 129 F.3d 1076 (10th Cir. 1997) (affirming summary judgment on ground that there was no violation of ADA's association provision when employee terminated as the result of employee's son's disability, which posed a direct threat of harm to the workplace). Mr. Richards has not come forward with evidence demonstrating that Mr. Mattocks eliminated his job based on unfounded notions or assumptions about his relationship with his daughter.

The purpose of the association provision is to prevent employers from taking adverse actions based on *unfounded stereotypes and assumptions* about individuals who associate with people who have disabilities. This intent of Section 12112(b)(4), to prevent adverse actions based on unfounded stereotypes and assumptions, is made clear in its legislative history, which is discussed at length in *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081-85 (10th Cir. 1997). As noted by the 10th Circuit in *Den Hartog,* the legislature intended only to prevent an employer from taking action based upon *unfounded* assumptions or stereotypes:

> [A]ssume, for example that an applicant applies for a job and discloses to the employer that his or her spouse has a disability. The employer

7

> believes the applicant is qualified for the job.  The employer, however, *assuming without foundation* that the applicant will have to miss work or frequently leave work early or both*,* in order to care for his or her spouse, declines to hire the individual for such reasons.  Such a refusal is prohibited…

*Id.* at 1082 (citation omitted) (emphasis added).  The EEOC, too, has concluded that the intended scope of the association provision is to prevent adverse job actions arising out of employers' *unfounded* stereotypes and assumptions.  In October 2005, the EEOC issued guidance on the ADA's association provision which states that the "purpose of the association provision is to prevent employers from taking adverse actions based on unfounded stereotypes and assumptions about individuals who associate with people who have disabilities."  *Questions and Answers About the Association Provision of the Americans With Disabilities Act*, (E.E.O.C.  Oct. 17, 2005).

Consistent with the principle that the ADA's association provision protects employees from actions based only upon *unfounded* assumptions is long-held principle that employers may take action based on the *actual impact* the employee's relationship with the disabled person has on the workplace because it is not required to accommodate the non-disabled employee by allowing them to take time off to care for their disabled family member.  *Overley,* 2006 WL 1133292 at *4-5 (6th Cir. 2006) (affirming summary judgment for employer when employee misses work to care for disabled daughter because employer not required to modify employee's schedule to care for her daughter); *Hilburn v. Murata Elec. North America,* 181 F.3d 1220 (11th Cir. 1999) (affirming summary judgment for employer on employee's claim that she was denied position because of absenteeism resulting from care for disabled husband and son); *Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 214 (4th Cir. 1994) (granting

summary judgment for employer where employer terminated employee who missed work due in part to disability of family member); s*ee also* H.R. Rep. No. 101-485, pt. 2 at 61-62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343-44 (stating employee may be dismissed if the reason for the absence is to care for the spouse because "[t]he employer need not provide any accommodation to the non-disabled employee.")

In a decision decided only a few weeks ago, *Overly v. Covenant Transport, Inc.*, 2006 WL 1133292 (6th Cir. 2006), the Sixth Circuit granted summary judgment for an employer even though the employer *expressly* terminated the employee for missing work to care for her daughter.

> Unlike a claim brought by a disabled person, an employer is not required to reasonably accommodate an employee based on her association with a disabled person . . . . Thus, Overley cannot claim that Covenant discriminated against her by not granting her sufficient time off or allowing her to modify her schedule so that she could care for her daughter. An employee who cannot meet the attendance requirements of her job is not protected by § 12112(b)(4). . . . Courts have surmised that an employee would be protected under the statute if the employee was only distracted at work, but did not require a reasonable accommodation, …, or if the employer's decision was based solely on an unsubstantiated belief that the employee would have to miss work because of the association…. Neither of those scenarios is applicable to the case at hand. Covenant did not base its decision on a belief that Overly would have to miss work to care for her daughter, but rather on her record of declined shifts and the absence on January 4.

*Id.* at *4. Further, in *Overly*, as in the present case, the employee (unsuccessfully) contended that two comments her supervisor made raised a reasonable inference that she was fired because of her daughter's disability. In that case, the statements were direct. There, the supervisor, on two occasions, told the employee, "if she had too much going on with her daughter, then perhaps she should be taken off her job." The court found that the two statements were not inference of discrimination, rather "simply

reflect[ed] a supervisor's concern with an employee who cannot meet certain requirements of her job." *Id.* at *5. Further, it noted that "an employer does not violate the ADA by threatening an adverse employment action in response to an employee's demand for an accommodation to which she is not entitled. The statements do not give rise to a claim under § 12112(b)(4)." *Id.*

The statement in the present case that forms the basis of Mr. Richards' claim that Mr. Mattocks eliminated his position because of his association with his ill daughter similarly do not raise any impermissible inference. First, at most, Mr. Richards contends Mr. Mattocks must have terminated him because he allegedly commented that it was difficult to arrange meetings with him because he was out a lot. This is not an unfound assumption on Mr. Mattocks' part. It is undisputed that Mr. Richards worked only a 34-hour schedule and still was out for many things in addition to caring for his daughter, such as personal time off, his own appointments, vacation time or even due to the fact that he worked only 34 hours per week. (Facts 14) Although Mr. Mattocks vehemently denies that he selected Mr. Richards' position for elimination because he was unavailable for meetings due to his daughter's illness, even if it were true, such action is not impermissible under the ADA's association provision because Defendant was not required to accommodate Mr. Richards' need to be out. *See, e.g., Barker v. Int'l Paper Co.*, 993 F.Supp. 10, 15 Me. 1998)(holding no *prima facie* case of discrimination where Defendant has not acted upon unfounded assumptions about plaintiff based on his wife's disability).

If Mr. Richards could, contrary to undisputed fact, establish a *prima facie* case of discrimination, his claim still would fail because Mr. Mattocks has articulated a

legitimate, nondiscriminatory reason for his actions.  *Barker*, 993 F. Supp. at 14.

Mr. Mattocks eliminated Mr. Richards' position to save money for River Valley.  It is

undisputed that Mr. Mattocks' superiors instructed him, as Executive Director, to reduce

River Valley's expenses.  (Facts 26)  It is undisputed that the elimination of Mr.

Richards' position saved the agency approximately $40,000 - $60,000.  (Facts 30)

Further, it is undisputed that eliminating Mr. Richards' position was not the only cost-

savings measure Mr. Mattocks undertook:  He began himself performing graphic design

duties that were previously outsourced; he failed to fill positions of persons who

resigned or were terminated; he eliminated there positions; he even negotiated for cost

savings on stationary and signage.  (Facts 29, 38)  Eliminating an employee's position

to reduce costs or save the expense associated with his or her salary is a legitimate,

non-discriminatory reason for taking an adverse employment action.  *See, e.g., Lawton

v. State Mut. Life Assurance Co. of America,* 924 F. Supp. 331 (D. Mass. 1996)

(granting summary judgment for employer where employer eliminated employee as part

of effort to reduce costs); *Woods v. Kentucky West Va. Gas Co.*, 2005 WL 1657089

(E.D. Ky. 2005) (granting summary judgment for employer where employee eliminated

and replaced with lower-paid new hire as cost savings measure); *Hill v. Burrell Com.

Group, Inc.*, 1995 WL 76881 (N.D. Ill. 1995) (granting summary judgment for employer

because "[c]utting costs is a legitimate non-discriminatory reason for firing a person.");

*Calabritto v. Dillon*, 920 F. Supp. 370 (E.D.N.Y. 1996) (granting summary judgment

where employer terminated employees to save the expense of their salaries).

     Because Mr. Mattocks has articulated a legitimate, non-discriminatory reason for

terminating Mr. Richards' employment, the burden shifts back to Mr. Richards to

establish that Mr. Mattocks' reason is merely pretext for discrimination, which he cannot

do. *Barker*, 993 F. Supp. at 14. Plaintiff cannot establish that Mr. Mattocks' elimination

of his position was a pretext for discrimination on the basis of his association with his

daughter. There is no evidence whatsoever that Mr. Mattocks was motivated by

anything other than cost-savings when he terminated Mr. Richards' employment.

Perhaps most significantly, even Mr. Richards himself admitted that he believed that Mr.

Mattocks' *motivation* for eliminating his position was cost savings:

> Q. Is there any other fact that you rely on other than what you've just testified to
> that forms the basis of your belief that Valley Health Systems played any role
> in the decision to terminate your employment?
> A. I also remember Mr. Mattocks speaking about needing to pay back Valley
> Health Systems money that River Valley owed as quickly as possible, even if
> it meant moving faster than the schedule of pay-backs, *so it was my opinion
> that he was motivated by Valley Health Systems to save money and make
> money as quickly.*
> Q. What is your understanding of the fact that River Valley was motivated to
> save money and make money as quickly as it could had to do with a decision
> to eliminate your position.
>     MR. SIKORSKI: Objection.
> A. I believe that in the short-term, Mr. Mattocks believed that my getting – by
> terminating me he would be saving my salary to use as a way of speeding up
> the loan payments back to Valley Health Systems.
> Q. Just so I understand your testimony, it's your understanding that Mr. Mattocks
> believed by eliminating your position, it could save money?
>     MR. SIKORSKI: Objection.
> Q. For River Valley?
>     MR. SIKORSKI: Objection.
> A. This is a belief I have.
> Q. But that was your belief, is that correct?
> A. In hindsight, yes, it's my belief.

Because Plaintiff cannot offer any genuine issue of material fact to support a

finding that his job was eliminated as a result of his association with his daughter,

summary judgment for Mr. Mattocks on Count II is appropriate.

B. <u>Defendant Mattocks is Entitled to Judgment On Count III Which Alleges
Association Discrimination in Violation of Massachusetts Law.</u>

Massachusetts law does not recognize a cause of action for terminating

someone for associating or being in a relationship with a disabled person.[4]  Title I of the

ADA contains a provision that expressly prohibits association discrimination, but Mass.

Gen. Laws Ch. 151B does not.  In Title I, the word "discriminate" includes "excluding or

otherwise denying equal jobs or benefits to a qualified individual *because of the known*

*disability of an individual with whom the qualified individual is known to have a*

*relationship or association."*  42 U.S.C. § 12112(b)(4 ) (emphasis added).  Similar

language is not found in Chapter 151B.  Contrary to the ADA, Chapter 151B's definition

section, § 1, contains no definition of "discrimination."  However, § 1(4) states that

"unlawful practices" include *only* those unlawful practices specified in § 4.  Chapter

151B, § 4(16) makes it an unlawful practice "[f]or any employer, personally or through

an agent, to dismiss from employment or refuse to hire, rehire or advance in

employment or otherwise discriminate against, because of his handicap…."  There is no

language anywhere within § 4(16) that states or suggests that a non-handicapped

person has a cause of action based on the handicap of another.  *See* Mass. Gen. Laws

ch. 151B, § 4(16).  The plaintiff's construction of Chapter 151B, § 4(16) would require

the Court to overlook the plain statutory language in contradiction to principles of

---

[4]Defendant notes that in an unpublished opinion, *Healy v. Brigham and Women's Hosp., Inc.*,
2005 WL 2456211 (Mass. App. Ct. 2005), the court, noted that it had "accept[ed], for the purpose of [that]
case that the plaintiff was a member of a protected class on a theory of 'association discrimination' by
virtue of her handicapped children."  The court then cited the ADA for support of that conclusion.  It is
unclear, from the decision, however, whether the lower court made any analysis as to whether Chapter
151B would include an association provision or whether the parties even argued the issue.  The issue
was not determinative in the *Healy* case because the Plaintiff's pregnancy qualified her for protection
against disparate treatment.  The Court's analysis primarily focused on the role the plaintiff's pregnancy
played in the adverse employment action affecting her.

statutory construction.  *Commonwealth v. Grove*, 366 Mass. 351, 354 (1974)

("Elementary rules of statutory construction require that each statute be interpreted as

enacted.")  The Court should not read something into Section 4(16) which simply is not

there.

Further evidence of the lack of a latent association provision in § 4(16) is the fact

that the Massachusetts Commission Against Discrimination has issued extensive

Guidelines that fail to acknowledge such a form of handicap discrimination.  In 1983, the

Massachusetts Legislature amended the Fair Employment Practices Law, Chapter

151B, to prohibit discrimination in employment on the basis of handicap.  The ADA was

enacted in 1990.  In 1998, long after the enactment of the ADA, the Massachusetts

Commission Against Discrimination issued *Guidelines:  Employment Discrimination on

the Basis of Handicap*, for the express purpose of assisting "employers, labor

organizations, employment agencies and persons with handicaps, and their lawyers, in

understanding what employment practices are lawful or unlawful and what steps must

be taken to accommodate handicapped persons."  Nothing in those Guidelines even

remotely suggests that Chapter 151B prohibits discrimination based on associating or

being in a relationship with a handicapped or disabled person.  The lack of any mention

of an association or relationship basis of handicap discrimination is particularly

significant as the federal courts clearly had been addressing those issues prior to the

time MCAD issued its Guidelines.  Further, although the MCAD has addressed the

association issue in some contexts,[5]  Defendant could locate no written decisions

wherein the MCAD recognized an association claim in an employment discrimination

---

[5]*See, e.g. Dittbenner v. Hapco Auto Parts, Inc.*, 1139 Mass. Discrim. L. Rptr. 1139, 1140-41 (1989)(MCAD refusing to dismiss a charge of discrimination on the ground that an individual had no standing to bring a discrimination complaint on the ground that her husband had lupus).

case that proceeded to Public Hearing.  One would presume that when the MCAD

issued its Guidelines in 1998, it was aware of the then-existing case law interpreting the

statute's federal counterpart, and that it could have included a reference to the

association-aspect of the ADA as being part of Chapter 151B if its intent was to include

an association basis for discrimination under Chapter 151B, § 4(16).  The MCAD's

failure to include discrimination on the basis of associating or relating to a handicapped

person in its Guidelines logically leads to the conclusion that it did not wish to read such

a provision into § 4(16)'s language.  Like courts of other jurisdictions that have refused

to read an association provision into a state's anti-discrimination statute where none

existed, the Court, in the present case, should likewise refuse to do so.  *see, e.g., Smith*

*v. Hinkle Mfg., Inc.*, 2002 WL 1215607 *5 (6th Cir. 2002) (holding Plaintiff's association

claim under Ohio law has no merit where the Ohio handicap discrimination statute

contains no provision comparable to the ADA's prohibition against associational

discrimination.) [6]

C. Judgment is Appropriate for Defendant Mattocks on Counts IV and V which
   Allege Age Discrimination in Violation of Federal and State Law Respectfully

It is undisputed that Mr. Richards has no direct evidence of discrimination, *i.e.,*

admissible evidence, which, if believed, would allow for a reasonable conclusion that

but for his age he would not have been terminated.[7]  Thus, to defeat Mr. Mattocks'

Motion, Mr. Richards must satisfy the framework set forth in *McDonnell Douglas Corp.*

---

[6] Should the court recognize association discrimination under Massachusetts law, judgment still is appropriate for Defendant Mattocks on Count III for the reasons set forth in Section II. A., *supra*.

[7] Mr. Richards has not alleged to have any direct evidence of discrimination.  Indeed, direct evidence is "direct" and consists of a decision-maker's statements that directly reflect the alleged animus and bear squarely on the contested employment decision.  *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 60 (1st Cir. 2000); *Fernandes v. Cost Brothers Masonry, Inc.*, 199 F.3d 572, 581 (1st Cir. 1999).  It is undisputed that Mr. Mattocks did not tell Mr. Richards he was terminating him based on his age.  To the contrary, Mr. Richards admitted that he was told that he was terminated as a cost savings measure. (Facts 33-34. ¶ 20)

*v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).[8]  To do so Mr. Richards must establish a *prima facie* case of age discrimination.  If he does, Mr. Mattocks must articulate a lawful reason for terminating his employment.[9]  However, once Mr. Mattocks' reason is articulated, the presumption of discrimination vanishes, and the sole remaining issue is whether Mr. Mattocks terminated Mr. Richards because of his age.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097 (2000); *Melendez-Arroyo v. Cutler-Hammer de P.R. Col, Inc.*, 273 F.3d 30, 33 (1st Cir. 2001).  Thus, to withstand Mr. Mattocks' motion for summary judgment, it is not enough for Mr. Richards merely to come up with just about anything to cast doubt upon Mr. Mattocks' justification for its employment actions:  Mr. Richards must point to admissible evidence which could raise an inference of discriminatory motive underlying the purportedly pretextual explanation.  *Lawrence v. Northrop Corp.*, 980 F.2d 66 (1st Cir. 1992).  As the undisputed facts below demonstrate, Mr. Richards cannot meet his burdens.

Mr. Mattocks has articulated a legitimate, non-discriminatory reason for Mr. Richards's termination; namely, it was to reduce River Valley's operating costs.  (Fact 30)  As set forth in more detail in Defendant's Statement of Undisputed Fact and in Section II. A., herein, Mr. Mattocks had been instructed by his superiors to reduce River

---

[8]Massachusetts, too, uses a burden-shifting analysis akin to federal law to determine whether age discrimination in violation of Chapter 151B has taken place.  *See*, *e.g.*, *Abramian v. President & Fellows of Harvard College*, 432 Mass. 107 (2000).

[9]In a job elimination case such as this one, Mr. Richards must first establish a *prima facie* case of discrimination by demonstrating (1) he was at least forty years of age; (2) he met the employer's legitimate job performance expectations; (3) he experienced adverse employment action; and (4) his employer did not treat age neutrally or younger persons were retained in the same position.  *Brennan v. GTE Government Systems Corp.,* 150 F.3d 21 (1st Cir. 1998); S*ee also Knight v. Avon Products, Inc.*, 438 Mass. 413 (2003) (noting that substantially younger means younger by at least 5 years).  For purposes of this Motion only, Defendant Mattocks will assume Mr. Richards has met his burden.

Valley's operating expenses and increase revenue.  Mr. Mattocks took numerous steps in an attempt to do both.  (Facts 28, 29, 38)  Even Mr. Richards himself believes that Mr. Mattocks was motivated to eliminate his position because he believed that he could save money in the short run.  (Facts 34).  Courts have held that terminating employees to save costs is a legitimate, non-discriminatory reason for separation from employment.  *See, e.g, Lawton* v. State Mut. Life Ins. Co., 924 F. Supp. 331 (D. Mass. 1996)  Thus, his termination was based on legitimate, non-discriminatory business reasons, not his age.

Mr. Richards has no evidence whatsoever other than his bare contentions and speculation demonstrating that Mr. Mattocks' proffered reasons for its employment decision were not the real reasons, but were a pretext for age discrimination.  Indeed, inadmissible evidence, such as Plaintiff's subjective speculation and belief, may not be considered to create a genuine issue for trial and defeat a summary judgment motion.  *Horta v. Sullivan*, 4 F.3d 2, 7-8 (1st Cir. 1993); *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 16-17 (1st Cir. 1986).  Summary judgment is appropriate, even in employment discrimination cases, "where elusive concepts such as motive or intent are at issue . . . if the non-moving party rests merely upon conclusive allegations, improbable inferences, and unsupported speculation."  *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 870-71 (1st Cir. 1997).  To demonstrate pretext the "plaintiff must do more than simply refute or cast doubt on the company's rationale," *Medina-Muñoz v. R.J. Reynolds*, 896 F.2d 5,  9 (1st Cir. 2000).  He also must show an impermissible discriminatory animus.  *LeBlanc v. Great Am. Ins. Co.,* 6 F.3d at 842.  In assessing pretext, a court's "focus must be on the perception of the decision-maker," that is,

17

whether the employer believed its stated reason to be credible.  *Gray v. New England Tel. and Tel. Co.,* 792 F.2d 251, 256 (1st Cir.1986).  It is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must "elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: age discrimination."  *Medina-Munoz*, 896 F.2d at 9.  Nonetheless, all Mr. Richards has offered as evidence to support his age claim is the fact that some of his job duties were transferred to Mr. Avakian who is approximately 9 years younger than him:

> Q. Mr. Richards, you have brought an age discrimination claim against your former employer, River Valley Counseling Center, and the other defendants in this case.  Are you aware of that?
> A. Yes.
> Q. What facts do you rely on that form the basis of your belief that River Valley Counseling Center terminated your employment because of your age?
> MR. SIKORSKI:  Objection; you can go ahead.
> A. Mr. Avakian, who was the primary leader in the position after I left—in the program after I left --- is about ten years younger than I am.
> Q. Any other fact that you rely on that forms the basis of your belief that River Valley Counseling Center terminated your employment because of your age?
> A. No.

(Richards Depo. pp. 174-75; Facts 40)

Merely demonstrating that Mr. Mattocks allocated Mr. Richards duties to other existing employees, even Mr. Avakian, does not itself raise a reasonable inference that the employer harbored discriminatory animus toward Mr. Richards.  *Lewis v. City of Boston*, 321 F.3d 207, 216 (1st Cir. 2003).  As the First Circuit observed in *Lewis*:

> In the typical reduction in force case, the employers' actions have already been explained, as the reduction in force is itself a legitimate, non-discriminatory reason for the layoffs.  And as recognized by the district court, "in a reduction in force situation, a company generally reorganizes its workforce and reassigns responsibilities to reduce headcount and save

> money." Merely demonstrating that, as a result of the reduction in force, the employer consolidated positions or allocated duties of discharged employees to other existing employees does not itself raise a reasonable inference that the employer harbored discriminatory animus toward any one employee." . . . We are careful *not* to suggest, however, that an employer may mask unlawful discrimination by simply transferring all of an employee's duties to another employee during a reduction in force. Rather we are saying that the employee must come forward with something more than evidence of the inevitable transfer of his or her responsibilities to existing employees.

*Id.* Like the Plaintiff in *Lewis*, Mr. Richards has failed to come forward with something more than evidence of the inevitable transfer of his or her responsibilities to existing employees.

Courts have recognized various types of circumstantial evidence that may show be demonstrative of pretext, none of which exist in this case.[10] To the contrary, all other facts and circumstances indicate that age bias played no role in Mr. Richards' separation from employment. Indeed, no inference of discrimination arises from the fact that Mr. Mattocks, who made the decision to terminate Mr. Richards, is older than Mr. Richards. In addition to assigning duties to the indisputably-well qualified Mr. Avakian,[11] Mr. Mattocks assigned Mr. Richards' other, former duties to Mr. Kassis who was 53 as of November 2004. Although Mr. Kassis was slightly younger than Mr.

---

[10] These include, but are by no means limited to, statistical evidence showing disparate treatment by the employer of members of the protected class, *see, e.g., Olivera v. Nestle Puerto Rico, Inc.,* 922 F.2d 43, 49 (1st Cir.1990), comments by decision-makers which denigrate those over forty, *see, e.g., Siegel v. Alpha Wire Corp.,* 894 F.2d 50, 55 (3d Cir.), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990), the incidence of differential treatment in the workplace, *see, e.g., McDonnell Douglas,* 411 U.S. at 804-05, 93 S.Ct. at 1825-26, and the deployment of younger replacements, *see, e.g., Hebert,* 872 F.2d at 1115. Above all, courts will look at evidence of discrimination not in splendid isolation, but as part of an aggregate package of proof offered by the plaintiff. *Olivera,* 922 F.2d at 50.

[11] There is no dispute that Mr. Avakian, even in Mr. Richards' opinion, was a valuable clinician and leader, who was competent to take over for Mr. Richards when he was not available. (Facts 4, 19) Further, and perhaps ironically, it was Mr. Richards that made sure that Mr. Mattocks was aware of Mr. Avakian's contributions to the organization by urging Mr. Mattocks to promote him and increase his salary. (Facts 19)

Richards, an inference of age discrimination cannot be drawn from the replacement of one worker with another worker insignificantly younger**.** *Williams v. Ratheon Co.*, 45 F. Supp. 2d 124, 130-31 (D. Mass. 1999) (noting that replacement who was 2½ half years younger than plaintiff did not allow for an inference of age discrimination). Also there is no evidence of age-based commentary in the workplace. Indeed, Mr. Richards has absolutely no admissible evidence that would establish that Mr. Mattocks' reason for his termination, cost savings, was a cover-up for age discrimination. Because there is no evidence to support Mr. Richards' wholly speculative state and federal age discrimination claims, those claims should be dismissed. *Mesnick,* 950 F.3d at 825 (upholding summary judgment for employer where there was no significantly probative evidence that employer's stated reason for its actions masked a discriminatory animus based on the plaintiff's age.)

> D. <u>No Reasonable Jury Could Conclude that Mr. Mattocks Terminated Mr. Richards' Employment in Retaliation For Taking FMLA Leave.</u>

The undisputed facts demonstrate that Mr. Mattocks did not take adverse action against Mr. Richards for exercising his right to FMLA leave. The First Circuit's approach to an FMLA retaliation claim is to permit proof directly, or by inference, with the ultimate burden of proof remaining on the plaintiff to prove by a preponderance of the evidence that the employers' adverse employment action was in retaliation for exercise of protected rights. *Colburn v. Parker Hannifin/Nichols Porland Div.*, 429 F.3d 325 (1st Cir. 2005). There is no direct evidence that Mr. Mattocks terminated Mr. Richards' employment in retaliation for taking FMLA leave, and the undisputed facts demonstrate that Mr. Richards cannot show by a preponderance of indirect evidence that Mr.

Mattocks terminated his employment in retaliation for his FMLA leave.[12]

Plaintiff cannot establish a prima facie case of FMLA retaliation. To make out a *prima facie* case of retaliation, a plaintiff must show that (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Hodgens v. General Dynamics Co., 144* F 3d 151, 161 (1st Cir. 1998). Here there is no dispute as to the existence of facts supporting the first and second elements; however, the undisputed facts demonstrate no connection between the two actions.[13]

There is no logical connection between Mr. Richards' FMLA leave and his separation from employment. The only purported "evidence" of such a connection are two alleged facts: Mr. Mattocks purported comment that he found it difficult to meet with Mr. Richards because he was out of work due to his daughter, and Mr. Richards' belief

---

[12] The First Circuit has long held that where, as here, a plaintiff cannot show direct evidence of retaliation, a plaintiff can use the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Colburn*, 429 F.3d at 335.

[13] It is illogical to conclude that Mr. Mattocks terminated Mr. Richards because he was taking intermittent leave when Mr. Mattocks did not even know when or if Mr. Richards was doing so. Indeed, despite Ms. Viens instruction to keep Mr. Mattocks apprised of his intermittent time off, Mr. Richards did not tell him when he was out on FMLA leave, instead, he told his next in charge, Mr. Avakain. (Facts 16). There is absolutely no evidence that Mr. Avakian shared any of his information with Mr. Mattocks. Further, as Mr. Mattocks and Mr. Richards did not even work at the same location, Mr. Mattocks was not at a physical location to notice Mr. Richards' comings and goings. (Facts 6). Moreover, although Mr. Richards contends that Mr. Mattocks may have had difficulty scheduling meetings with him due to his absence from work, it is disputed that Mr. Richards' was out of work frequently for a variety of reasons, many of which were not FMLA-related, including the fact that he worked a less than 40-hour work week. (Facts 14-15). When he worked those 34 hours per week early in the week, he then could take a later day in the week off. (Facts 14). His schedule also was flexible, and he could come in and leave whenever he chose. (Facts 14). Thus, at any given time he could have been out of work simply because it was not his working hours. Other reasons that he could of have been out of work, which reasons he did not share with Mr. Mattocks, were for vacation days, personal days, holidays, or sick days. (Facts 15, 17). There was nothing on Mr. Richards' time sheets that indicated whether any of these times out of work were FMLA-related. (Facts 17) Further, Mr. Richards did not only keep Mr. Mattocks verbally apprised of when he was out on FMLA leave, but he also did not submit any documentation to Mr. Mattocks or Human Resources demonstrating when his absence from work was FMLA-related or for some other reason. (Facts 17)

that he was excluded from "smaller" Executive Committee Meetings because they conflicted with his need to be home on some mornings to care for his daughter. The fact that Mr. Mattocks noted difficulty meeting with Mr. Richards because he was not at work does not logically lead to the conclusion that he then, therefore, terminated his employment. Mr. Richards' sole support of a connection between the meetings and his termination is the fact that beginning in October 2004, Mr. Mattocks left him a voicemail canceling a meeting the two had scheduled, and Mr. Mattocks did not drop by to speak with him as frequently as he had in the past. There is absolutely no evidence in the record as to when this alleged cancellation occurred or why it occurred. Rather, the contention that the cancellation was the result of Mr. Richards' FMLA leave is entirely based on Mr. Richards' speculation and nothing more. Mr. Richards similarly has come forward with no evidence, other than his own speculation, as to why Mr. Mattocks allegedly began dropping by on a less-frequent basis. It is well-established law in this jurisdiction that a Plaintiff cannot avoid summary judgment by speculation. *Lehman v. Prudential,* 74 F. 3d 323, 327-28 (1st Cir. 1996) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation".)[14]

---

[14] Further, Richards' own testimony contradicts the conclusion that there was a connection between his unavailability due to FMLA-protected absences and Mattocks' alleged change in behavior toward him. Despite this alleged mystery cancellation and decline in "drop bys," Mr. Richards admitted that his relationship with Mr. Mattocks was one of mutual respect and that Mr. Mattocks was responsive to his concerns." (Facts 23-25) This certainly is not characteristic of one who harbors discriminatory animus toward another. Further, with respect to Mr. Mattocks exclusion of him from "smaller" Executive Committee meetings, Richards admitted that he told Mr. Mattocks that the "small" Executive Committee meetings that Mr. Mattocks was allegedly proposing he attend would conflict with other meetings he was already attending. Further, Mr. Richards admits that Mr. Mattocks did not have him go to the meetings because he was working out the purposes of the various meetings and was not sure why Mr. Richards would be needed at the new meetings. (Facts 21)

As set forth in previous sections herein, Mr. Mattocks eliminated Mr. Richards' position to save River Valley money.  This was not a new concept:  In fact, during his employment with River Valley, Mr. Richards had experienced the elimination of redundant positions as cost-savings measures.  (Facts 28).  Mr. Mattocks took numerous steps to save money at River Valley and increase its revenues before and after Mr. Richards' separation from employment.  (Facts 29).  His separation was not a sham:  His duties were in fact transferred to two, indisputably qualified people, saving River Valley $40,000 to $60,000.  (Facts 30).

Mr. Richards cannot demonstrate that Mr. Mattocks' contention that he terminated him for cost-saving measures is pretextual.  Mr. Mattocks' lack of discriminatory animus is evident from the very beginning of his knowledge that Mr. Richards wished to take leave to care for his daughter.  Mr. Mattocks directed Mr. Richards to the proper party to whom he should address his need for leave, namely the Director of Human Resources, Ms. Viens.  (Facts 8)  Mr. Mattocks then had no further involvement in Mr. Richards' FMLA leave.  Ms. Viens gathered and sent Mr. Richards the FMLA paperwork that needed to be completed by him and applicable healthcare providers, and Mr. Richards returned that completed paperwork to Ms. Viens.  (Facts 8-9, 11-13).  Ms. Viens made the decision to approve Mr. Richards' leave, and Ms. Viens informed Mr. Richards that he needed to let Mr. Mattocks know when he was using the intermittent FMLA leave.  (Facts 12).

There is not a shred of evidence that Mr. Mattocks harbored hostility toward Mr. Richards' use of FMLA leave subsequent to his exercise of protected activity.  There is, however, undisputed evidence that after Mr. Richards told Mr. Mattocks of his need for

leave, Mr. Mattocks continued to value Mr. Richards as the Program Director when he approved a raise and promotion for Mr. Avakian on Mr. Richards' recommendation. (Facts 19) There also is undisputed evidence, namely Mr. Richards' own testimony, that Mr. Richards described his relationship with Mr. Mattocks as one of mutual respect, and that Mr. Mattocks was responsive to issues Mr. Richards brought to his attention. (Facts 24).  Accordingly, summary judgment for Mr. Mattocks on Count I is appropriate.

Respectfully Submitted,


 /s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.
BBO #566613
Counsel for Defendant Mattocks
Skoler, Abbott & Presser, P.C.
One Monarch Place, Suite 2000
Springfield, Massachusetts  01144
Dated:  May 12, 2006                    Tel. (413) 737-4753/Fax (413) 787-1941

COUNSEL CERTIFICATION

In accordance with Local Rule 7.1(A)(2) of the United States District Court for the District of Massachusetts, I certify that Defendant's counsel conferred with counsel for the Plaintiff on April 28, 2006 by conference call in a good-faith effort to resolve or narrow the issues presented in this Motion and was partially unsuccessful in those efforts.

CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Memorandum in Support of Defendant Mattocks Motion for Summary Judgment* was served upon the attorney of record for each other party via electronic filing on May 12, 2006.


 /s/ Marylou Fabbo, Esq.
Marylou Fabbo, Esq.