UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 05-30061-MAP

MARK A. RICHARDS,                              )
     Plaintiff                                )
                                              )
vs.                                            )
                                              )
RIVER VALLEY COUNSELING CENTER, INC., )
VALLEY HEALTH SYSTEMS, INC.,                   )
DAVID G. MATTOCKS and DONNA VIENS,             )
     Defendants                               )

**PLAINTIFF'S REPLY TO STATEMENT OF MATERIAL FACTS NOT IN
DISPUTE OF DEFENDANTS, RIVER VALLEY COUNSELING CENTER, INC.,
VALLEY HEALTH SYSTEMS, INC. AND DONNA VIENS**

A.     <u>Background Regarding Plaintiff's Employment With RVCC</u>

     1.     RVCC provides psychiatric, social and medical services to the Springfield,

Holyoke, and Chicopee communities.

<u>Response 1</u>

     Admitted.

     2.     In the early 1990's, Plaintiff became an employee of RVCC, when RVCC

took over the Highland Day Treatment Center in Springfield where Plaintiff was

employed as the Program Director.  (Relevant portions of Plaintiff's deposition are

attached as Exhibit A).  (Exhibit A, p. 20).

<u>Response 2</u>

     Admitted.

451064

3.     RVCC employed the Plaintiff as its Program Director for its Psychiatric Day Treatment Program.  (Complaint, ¶¶ 1, 8).

Response 3

Admitted.

4.     During the late 1990's, RVCC was having financial difficulties. (Exhibit A, p. 24).

Response 4

Admitted.

5.     In approximately 1997, Plaintiff became the Program Director for RVCC's Day Treatment Programs in Holyoke and in Springfield.  (Exhibit A, p. 23).

Response 5

Admitted, except that the date should be 1996.

6.     As a result, RVCC terminated the employment of the former Program Director for the Day Treatment Program in Holyoke.   (Exhibit A, p. 21).

Response 6

The state regulations require a program director for each such program.

7.     For a period of time, Plaintiff was the Program Director for both programs as a cost savings by eliminating the redundancy of RVCC having two program directors for the day treatment programs.  (Exhibit A, p. 25).

Response 7

Admitted that this occurred for one year.

8.     At some later date, RVCC stopped operating the Day Treatment Program in Springfield.  (Exhibit A, pp. 25-26).

Response 8

The date should be 1997.

9.     Plaintiff continued as the Program Director of RVCC's Psychiatric Day

Treatment Program in Holyoke.  (Exhibit A, pp. 25-26).

Response 9

Admitted.

B.     Plaintiff's Request for Intermittent FMLA leave in 2000

10.     Confidential.

11.     Confidential.

12.     Confidential.

13.     Confidential.

14.     Confidential.

15.     Confidential.

Response 10-15

The plaintiff essentially admits the allegations in paragraphs 10-15.

C.     RVCC's New Executive Director

16.     In the summer of 2004, David Mattocks ("Mr. Mattocks") was hired as the

Executive Director of RVCC.  (Relevant portions of Mr. Mattocks' deposition are

attached as Exhibit C).  (Exhibit C, p. 10).

Response 16

Admitted.  There is some dispute as to when David Mattocks actually started

working.

451064

17.     Mr. Mattocks was RVCC's Executive Director for approximately one year.  (Exhibit C, p. 10).

Response 17

Mattocks left in less than a year to take a psychiatric disability leave.

18.     Plaintiff got along well with Mr. Mattocks.  (Exhibit A, p. 230).

Response 18

Admitted.  Plaintiff got along well with everyone, as he was a professional and conscientious manager.


D.     RVCC's Relationship with H-C Management and VHS

19.     The sole member of RVCC is VHS.  (Relevant portions of Mr. Porten's Individual deposition are attached as Exhibit D).  (Exhibit D, p. 21).

Response 19

Admitted.

20.     The sole member of H-C Management Services, Inc. ("H-C Management") is VHS.  (Exhibit D, p. 21) (Relevant portions of Mr. Porten's 30(b)(6) deposition are attached as Exhibit E). (Exhibit E, p. 13).

Response 20

Admitted.

21.     H-C Management employed certain members of the management team that work in various VHS affiliates.  (Exhibit D, p. 21-22).

Response 21

Admitted.

22.     H-C Management employed Mr. Mattocks when he was RVCC's Executive Director.  (Exhibit D, p. 17).

Response 22

Admitted.  The close connection between VHS and H-C Management make VHS the alter-ego of H-C Management and responsible for the actions of its employees.

23.     In consideration of a series of loans that VHS made to RVCC prior to 2004, H-C Management and RVCC entered into a management oversight agreement in which the Executive Director and Controller were employees of H-C Management. (Relevant portions of the deposition of Mr. Haas are attached as Exhibit F). (Exhibit F, p. 9; Exhibit D, p. 22).

Response 23

Admitted.  The close connection between VHS and H-C Management make VHS the alter-ego of H-C Management and responsible for the actions of its employees.

24.     RVCC paid a monthly management fee to H-C Management which included the salary of the Controller and Executive Director, as well as some management consultation time by H-C Management.  (Exhibit F, pp. 9-10).

Response 24

Admitted.  The close connection between VHS and H-C Management make VHS the alter-ego of H-C Management and responsible for the actions of its employees.


E.      Hiring of Director of Human Resources at RVCC


451064

25.    In August 2004, RVCC hired Ms. Viens as its Director of Human Resources.  (Exhibit A, p. 108)  (Relevant portions of the deposition of Ms. Viens are attached as Exhibit G). (Exhibit G, p. 5).

Response 25

Admitted.

26.    Plaintiff had a good work relationship with Ms. Viens.  (Exhibit A, pp. 111-112).

Response 26

Admitted.  The worked well with all his colleagues.


F.    Plaintiff's Request for Intermittent FMLA Leave in 2004

27.    Confidential.

28.    Confidential.

Response 27-28 - CONFIDENTIAL

Admitted.

29.    On August 30, 2004, Plaintiff requested intermittent FMLA leave to care for the medical needs of his daughter.  (Exhibit A, p. 77, and Exhibit 10 thereto).

Response 29

Admitted.   Before that, the plaintiff had spoken to Mattocks about his need for leave.

30.    Confidential.

Response 30 - CONFIDENTIAL

Admitted.

31.     On September 3, 2004, Ms. Viens gave Plaintiff a Request for Leave of Absence form and Medical Certification form.  (Exhibit 11 to Exhibit  A).

Response 31

Admitted.

32.     Confidential.

33.     Confidential.

Response 32-33 - CONFIDENTIAL

Admitted.

34.     On September 17, 2004, Ms. Viens approved Plaintiff's request for intermittent FMLA leave.  (Exhibit A, p. 89 and Exhibit 14 thereto).

Response 34

Admitted.  According to Richards' Affidavit, Mattocks, as the CEO, also approved it.

35.     In the approval letter, Plaintiff was instructed to inform Mr. Mattocks when he was going on intermittent leave or using intermittent leave.  (Exhibit 14 to Exhibit A).

Response 35

Admitted.

36.     Plaintiff's weekly time sheets did not contain anything specific about his use of intermittent family leave.  (Exhibit A, p. 218).

Response 36

451064

Admitted, but there is no place for this information on the time sheet.  Richard informed Mattocks orally of his use of leave, and Mattocks admitted in his deposition that Richards took time off to care for his daughter.

37.    Plaintiff did not provide Mr. Mattocks or the Human Resources Department with written documents indicating the hours that he took intermittent FMLA leave.  (Exhibit A, p. 95).

<u>Response 37</u>

Admitted, but there was no request to put this information in writing.

38.    Plaintiff did not tell Mr. Mattocks about every appointment and every time he was out on intermittent FMLA leave.  (Exhibit A, p. 91).

<u>Response 38</u>

Richards worked in a separate building from Mr. Mattocks.  He kept Mattocks adequately informed.

39.    Plaintiff told Mr. Mattocks that Plaintiff was out on intermittent FMLA leave when they had a scheduled meeting.  (Exhibit A, p. 75 and Exhibit 9 thereto).

<u>Response 39</u>

Admitted.  Richards would inform Mattocks when he spoke with him and would update him regularly.

40.    Plaintiff told Mr. Avakian and staff in RVCC's Day Treatment Program when he was out on intermittent FMLA leave.  (Exhibit A, p. 91).

<u>Response 40</u>

Admitted.  Unfortunately, Richards' need for intermittent leave was always on short notice and generally crisis driven.

G.    Mr. Avakian's Promotion to Assistant Program Director

41.    In the late summer of 2004, Plaintiff spoke with Mr. Mattocks about increasing Mr. Avakian's salary because Mr. Avakian was looking for a job with higher wages elsewhere.  (Exhibit A, pp. 99-100).

Response 41

Admitted.

42.    Plaintiff believed Mr. Avakian was a very valuable employee, who had been at the program for eighteen years.  (Exhibit A, p. 100).

Response 42

Admitted.  Avakian had lost $4,000 of compensation due to an increase in the cost of a family health insurance plan.

43.    As a supervisor, Mr. Avakian was the only person who could step in for the Plaintiff.  (Exhibit A, p. 101).

Response 43

Avakian was the most willing person with a graduate degree.

44.    Mr. Mattocks told Plaintiff that he was going ahead with the raise for Mr. Avakian and that Mr. Avakian would have a new position of Assistant Program Director. (Exhibit A, p. 103).

Response 44

Denied, insofar as Avakian had a new title but no additional responsibilities.

45.    Plaintiff did not disagree with Mr. Mattocks' decision to make Mr. Avakian the Assistant Program Director.  (Exhibit A, p. 170).

Response 45

      Denied, insofar as Avakian had a new title but no additional responsibilities.

    46.    On September 16, 2004, Mr. Mattocks notified Mr. Avakian of the promotion to the new position of Assistant Director of Psychiatric Day Treatment Program.  (Exhibit 16 to Exhibit A).

Response 46

      This was a new title but not a new position.

H.    Mr. Mattocks' Request that Plaintiff Attend Managers' Meetings

    47.    In the Fall of 2004, Mr. Mattocks asked Plaintiff to attend a small group meeting of managers that was held early-mornings, approximately three days a week. (Exhibit A, pp. 73-74).

Response 47

      These meetings were three or four days a week.

    48.    Plaintiff told Mr. Mattocks that he had a daily meeting at his own program that overlapped with the small group meeting of managers and that sometimes it might be difficult for him to attend due to his daughter.  (Exhibit A, pp. 75-76).

Response 48

      Admitted.

    49.    Plaintiff asked Mr. Mattocks the purpose of the meeting, what his role would be, and if there was some other way he could be of assistance.  (Exhibit A, p. 222).

Response 49

      Admitted.

50.    In response, Mr. Mattocks said that he was still working out the purposes of the meetings.  (Exhibit A, p. 223).

Response 50

Admitted.

51.    Mr. Mattocks did not tell Plaintiff that he had to attend those meetings. (Exhibit A, p. 224).

Response 51

No other manager was asked to join this meeting.  It was seen as a badge of honor.  Richards stated these meetings seemed to be "fixed," so he did not request a change.  In previous discussions with participants, he knew there were no other common times.

52.    Plaintiff did not ask Mr. Mattocks to schedule the meetings at some other time than in the morning.  (Exhibit A, p. 222).

Response 52

No other manager was asked to join this meeting.  It was seen as a badge of honor.  Richards stated these meetings seemed to be "fixed," so he did not request a change.  In previous discussions with participants, he knew there were no other common times.

I.    Decision to Eliminate Plaintiff's Position

53.    Mr. Mattocks made the decision to eliminate Plaintiff's position. (Exhibit C, p. 11; Exhibit G, p. 11).

451064

Response 53

      Mattocks made the decision with the approval of Hank Porten and Mary Kelleher.

      54.    Mr. Mattocks was under a charge from H-C Management and VHS to look at all positions within RVCC for their financial viability because RVCC had been operating under a significant deficit for many years and that, wherever possible, to make cost reduction measures.  (Exhibit C, p. 12).

Response 54

      Please see Statement of Material Fact in Dispute Nos. 2 and 8 in the Plaintiff's Opposition to Motion for Summary Judgment.  Richards' program was the most profitable of any program and it was on track to have another highly profitable year.

      55.    Mr. Mattocks eliminated Plaintiff's position because his responsibilities had been subsumed by a subordinate and that the elimination of Plaintiff's salary would contribute to the financial success of RVCC.  (Exhibit C, p. 12).

Response 55

      Denied.  Please see the Plaintiff's entire Opposition to Motion for Summary Judgment.


J.     Mr. Mattocks' Conversations with Mr. Porten and Ms. Kelleher Regarding the Decision to Eliminate a Position at RVCC

      56.    Mr. Mattocks met on a regular basis with Mr. Porten, President of VHS, and talked in general about economic goals of RVCC and issues to improve on. (Exhibit D, p. 12).

Response 56

      Admitted.

451064

57.    At a meeting Mr. Mattocks told Mr. Porten that there would be a reduction of positions at RVCC.  (Exhibit D, p. 10; Exhibit C, pp. 40-41).

Response 57

Admitted.

58.    Mr. Mattocks did not tell Mr. Porten a name associated with the reduction of positions.  (Exhibit D, p. 10; Exhibit C, pp. 41).

Response 58

Mattocks told Richard he had Porten's approval and support for his changes. Richards' was the only "change" that happened.

59.    Mr. Porten suggested that Mr. Mattocks speak with human resources regarding the position elimination.  (Exhibit C, pp. 41-42).

Response 59

Admitted.

60.    Mary Kelleher ("Ms. Kelleher"), employed by H-C Management as its Vice President of Human Resources, provided human resources services to RVCC on a consulting basis.  (Relevent portions of the deposition of Ms. Kelleher are attached as Exhibit H).  (Exhibit H, p. 5).

Response 60

Admitted.  This again shows the close relationship between VHS and RVCC.

61.    Mr. Mattocks and Ms. Viens spoke with Ms. Kelleher about a position elimination.  (Exhibit H, p. 7) (Exhibit C, pp. 41-42).

Response 61

451064

The three of them discussed the fact that Richards had applied for intermittent FMLA leave and that it was in connection with caring for his ill daughter.  This shows a high degree of knowledge that the plaintiff was in protected classes.

62.    Mr. Mattocks discussed offering severance to Plaintiff and the process in carrying out the termination of employment with Ms. Kelleher.  (Exhibit H, pp. 7-8).

Response 62

Admitted.

63.    Ms. Kelleher was told that Plaintiff's intermittent leave was to take care of his daughter.  (Exhibit H, p. 12).

Response 63

Admitted.

64.    Ms. Kelleher did not know the illness of Plaintiff's daughter.  (Exhibit H, p. 13).

Response 64

Ms. Kelleher discussed the fact that Mr. Richards was on FMLA.  It is part of her job responsibilities to understand what that meant and the reason why Richards was on FMLA.

65.    Ms. Kelleher was told that Plaintiff was not using intermittent FMLA leave.  (Exhibit H, p. 10).

Response 65

A better question is, Did anyone ask?  The form said treatment would last from four months to two years.

66.    Ms. Kelleher did not know Plaintiff's age.  (Exhibit H, p. 16).

Response 66

Denied.  Kelleher had been in meetings with Richards

67.    Ms. Viens did not know Plaintiff was on intermittent FMLA leave.

(Exhibit G, p. 17).

Response 67

Denied.  Viens wrote the approval letter dated September 17, 2004 and spoke

with Richards about the condition of his daughter.

K.    November 4, 2004

68.    On November 4, 2004, Plaintiff attended a large group meeting of RVCC

managers.  (Exhibit A, p. 121).

Response 68

Admitted.

69.    Mr. Mattocks told the group that Hank Porten, President of VHS, had

agreed with him on topics pertaining to RVCC and changes to be made.  (Exhibit A,

p. 122).

Response 69

Denied.  Richards recalls Mattocks saying that, "I had a very good meeting with

Hank Porten."  "Porten is behind me regarding changes I want to make."

70.    After the large group meeting on November 4, 2004, Plaintiff had a

meeting with Mr. Mattocks.  (Exhibit A, p. 124).

Response 70

This was immediately after the meeting.  Richards never left the table.

451064

71.     Ms. Viens came into the meeting with Mr. Mattocks and Plaintiff. (Exhibit A, p. 125).

Response 71

Admitted.

72.     Mr. Mattocks told Plaintiff that one of the changes was the termination of Plaintiff's employment.  (Exhibit A, p. 125).

Response 72

Denied.  Mattocks never mentioned other changes.

73.     Mr. Mattocks told Plaintiff that his termination of employment had nothing to do with his performance, but was for cost savings reasons.  (Exhibit A, pp. 125, 130).

Response 73

Admitted.

74.     Mr. Mattocks gave Plaintiff a copy of a severance agreement.  (Exhibit A, p. 126).

Response 74

Admitted.

75.     Mr. Mattocks told Plaintiff that Jeffrey Kassis ("Mr. Kassis"), with Mr. Avakian playing a role, would replace him.  (Exhibit A, p. 126; Exhibit C, p. 17).

Response 75

Denied, insofar as Mattocks told Richards that David Avakian would be the "acting director."

76.     Plaintiff's date of birth is July 6, 1950.  (Exhibit A, p. 5).

451064

Response 76

    Admitted.

77.    Mr. Mattocks' date of birth is January 18, 1950.  (Defendant David G. Mattocks' Answers to Interrogatories Propounded by the Plaintiff, attached hereto as Exhibit I.)

Response 77

    Admitted.

78.    Mr. Kassis' date of birth is February 22, 1951.  (Relevant portions of Mr. Kassis' deposition are attached as Exhibit J). (Exhibit J, pp. 41-42).

Response 78

    Admitted.

79.    Mr. Avakian's date of birth is October 6, 1959.  (Exhibit B, p. 4).

Response 79

    Admitted.  Avakian is 9 years younger, and he was given the role of Program Director.

80.    Plaintiff said that he wanted a way to save face and to present his termination to the staff in a way that sounded like he was leaving to care for his daughter rather than being fired.  (Exhibit A, p. 127).

Response 80

    Admitted.

81.    Later that day, Plaintiff and Mr. Mattocks met with RVCC's Day Treatment staff present on that day.  (Exhibit A, pp. 154-155).

Response 81

451064

Admitted.

82.     Plaintiff told the staff that the reason he was leaving was because of his daughter being ill, that he was going to be home to take care of her, and that Administration decided that he should leave right away.  (Exhibit A, p. 156).

Response 82

Admitted, except he did not say he was "going to be home."

83.     Plaintiff sent out a memo to approximately fifteen people announcing that he was leaving the agency due to family illness.  (Exhibit A, p. 163-164 and Exhibit 21 thereto).

Response 83

Admitted.

84.     On November 4, 2004, Plaintiff told two co-workers that Mr. Mattocks had terminated his employment and that Plaintiff did not expect it.  (Exhibit A, p. 173).

Response 84

Admitted.


L.     Plaintiff's Beliefs Regarding the Reasons for Termination of His Employment

85.     Plaintiff believed that Mr. Mattocks believed that, by terminating Plaintiff's employment, RVCC would be saving Plaintiff's salary and that savings would speed up the loan payments to VHS.  (Exhibit A, p. 183).

Response 85

Denied.  Please see plaintiff's entire Opposition to Motions for Summary Judgment.  Richards believed Mattocks thought he could sell this to his superiors.

86.     Plaintiff's belief that RVCC terminated his employment because he went out on intermittent FMLA leave was based on Plaintiff not being able to attend certain managers meetings, not being available when Mr. Mattocks sometimes called in the mornings, being told by Mr. Mattocks to have reliable back-up for billing in his absence, and that Ms. Viens told Plaintiff that she prevented an employee at her other job from going out on FMLA leave.  (Exhibit A, pp. 181-182).

Response 86

Admitted in part.  Mattocks wrote a memo critical of plaintiff taking FMLA leave and made other comments indicating his hostility toward it.   See Statement of Facts Nos. 4, 6 in Plaintiff's Opposition to Motions for Summary Judgment.

87.     Plaintiff's belief that RVCC terminated his employment because he had an ill daughter was based on Mr. Mattocks' comments that Plaintiff was not around very much, that it was hard for Mr. Mattocks to schedule meetings with Plaintiff because he was home caring for his daughter; that both Mr. Mattocks and Ms. Viens were aware of his daughter's illness and knew Plaintiff was the primary caretaker to help with his daughter's illness; and that his daughter's illness interfered at times with his ability to be at work in the mornings.  (Exhibit A, pp. 148, 177-178).

Response 87

Admitted in part.  Richards also brought his daughter to the worksite and he had to care for her at other times of the day.  He would get calls from school to come get her.

88.     Plaintiff believed that his relationship with Mr. Mattocks changed when, in October 2004, Plaintiff balked at attending a managers' meeting.  (Exhibit A, p. 149).

Response 88

This date could have been sometime in September.

89.    Mr. Mattocks slowed down about dropping in at RVCC's Psychiatric Day Treatment Program to talk about various things that were going on in the agency.

Response 89

Admitted.

90.    Mr. Mattocks left a voice mail canceling a meeting that Plaintiff felt was not left in a way he would have picked it up prior to the meeting happening.  (Exhibit A, pp. 149-150).

Response 90

Admitted.

91.    Plaintiff's belief that RVCC terminated his employment because of his age was based on the fact that Mr. Avakian, who was the primary leader in the position after he left the program, was about ten years younger than the Plaintiff.  (Exhibit A, pp. 174-175).

Response 91

Admitted in part.  See also Statement of Fact No. 14.

M.    VHS

92.    VHS did not set Mr. Mattocks' compensation, review his job performance, discipline him or terminate his employment.  (Exhibit E, p. 12-13).

Response 92

VHS is the alter-ego of H-C Management Company.

93.    VHS did not oversee any of the personnel decisions made by Mr. Mattocks.  (Exhibit E, p. 13).

451064

<u>Response 93</u>

      VHS is the alter-ego of H-C Management Company.

      94.     VHS did not have any role regarding the evaluation of Plaintiff's

performance.  (Exhibit E, p. 15-16).

<u>Response 94</u>

      VHS is the alter-ego of H-C Management Company.

      95.     VHS did not have a role in the decision to terminate Plaintiff's

employment.  (Exhibit E, p. 16).

<u>Response 95</u>

      VHS is the alter-ego of H-C Management Company.

              THE PLAINTIFF
              MARK A. RICHARDS

              By     */s/ John C. Sikorski*
              John C. Sikorski, Esq., of
              Robinson Donovan, P.C.
              1500 Main Street,  Suite 1600
              Springfield, Massachusetts 01115
              Phone (413) 732-2301  Fax (413) 785-4658
              BBO No.:  461970
              jsikorski@robinson-donovan.com

<u>CERTIFICATE OF SERVICE</u>

      I, John C. Sikorski, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on June 7, 2006.

      Subscribed under the penalties of perjury.

                 */s/ John C. Sikorski*
               John C. Sikorski, Esq.

451064