UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

CIVIL ACTION NO. 05-30061-MAP

MARK A. RICHARDS,                                )
    Plaintiff                                    )
                                                 )
vs.                                              )
                                                 )
RIVER VALLEY COUNSELING CENTER, INC.,            )
VALLEY HEALTH SYSTEMS, INC.,                     )
DAVID G. MATTOCKS AND DONNA VIENS,               )
    Defendants                                   )

### PLAINTIFF'S FINAL PRETRIAL MEMORANDUM

### I. STATEMENT OF EVIDENCE

    A.    **As to Liability.**

    1.    The plaintiff has worked for 16 years for River Valley and its predecessors, most recently as its Director of Psychiatric Day Treatment, Partial Hospitalization and Dialectical Behavior Therapy Services.

    2.    The plaintiff has always met the legitimate expectations of the employer and has been an outstanding employee.

    3.    The plaintiff's latest review in his personnel file is a strong review, and his program has continually been one of the most successful at the River Valley Counseling Center.

    4.    Over the years, the plaintiff had worked numerous hours uncompensated for the agency and had always been a positive member of the management team.

466524 v4                                                                                                                                2

5.      The plaintiff has one daughter who has had a serious health condition for several years. In 2000-2001, the plaintiff requested, and received, leave under the FMLA on an intermittent basis to care for his daughter.

6.      At the time of the plaintiff's request for leave under FMLA, and at all times relevant hereto, the plaintiff's daughter was a minor.

7.      The plaintiff's daughter has a disability and the plaintiff was in a close personal relationship with his daughter, a person with a disability and, therefore, is entitled to the protections of the Americans with Disabilities Act. See 29 C.F.R. .§ 1630.8.

8.      On September 3, 2004, the plaintiff again formally requested intermittent family leave to care for his daughter, who continued to have a serious health condition.

9.      The defendants, Donna Viens and David Mattocks, approved said leave and knew full well that he would be taking intermittent leave throughout the year running from September 8, 2004 to September 7, 2005.

10.     River Valley had more than 50 employees within 75 miles of the worksite the plaintiff worked at, and the plaintiff had at least 1,250 hours of service with his employer during the previous 12-month period.

11.     The plaintiff was fully eligible for FMLA leave.

12.     Full well knowing the plaintiff was on FMLA leave, and impermissibly motivated by his taking of FMLA leave, the defendants terminated the plaintiff on November 4, 2004, in willful disregard of his rights under the FMLA.

13.     Said termination was motivated by, among other things, retaliation for his taking FMLA leave.

14.     The termination was also motivated by the plaintiff's need to take leave arising out of his need to take care of his daughter, a person with a disability.

15.     The defendants' explanation for terminating the plaintiff is unworthy of belief, and is a pretext, among other things, for discrimination on the basis of disability.

16.     The plaintiff made a request pursuant to M.G.L. c. 149, § 52(C) for his complete personnel record.

17.     M.G.L. c. 149, § 52(C) requires the defendant employer to provide all documents (with a limited exception to protect the right of privacy of others, exception not applicable to this case) which relate to an employee's qualifications for employment, including continued employment.

18.     The defendants produced no documents at all justifying the plaintiff's termination or relating to his termination.

19.     The defendants provided conflicting, inconsistent explanations unworthy of belief for their conduct relating to the plaintiff, including not understanding the statutory requirements relating to the filling of the position.

20.     The individual defendant, Mattocks, obtained his position with River Valley and Valley Health through the means of fraud by, among other things, misrepresenting that the Ph.D. he has is a legitimate Ph.D. whereas it is a phony Ph.D. purchased from a well-known fraudulent institution.

21.     The defendants' conduct was in willing and knowing disregard of the plaintiff's rights under the ADA and the FMLA.

22.     The defendant Mattocks has personal liability for the above-mentioned violations of the FMLA.

**B.    Claim for Damages and Other Relief.**

The plaintiff will seek monetary damages as well as reinstatement with full seniority benefits to his previous position. Both the ADA and the FMLA prefer reinstatement as a remedy to front pay, as set forth in § 6 below, "Issues of Law." The plaintiff's base claim for economic losses is described in Exhibit A, a calculation of plaintiff's economic losses through December 3, 2006 with explanatory footnotes. Exhibit B is a "scorecard" of the damages available to the plaintiff in this action, as more fully explained in § 6 below, "Issues of Law."

## II.  STATEMENT OF FACTS

The parties expect that they can agree that the plaintiff worked for 16 years for River Valley and its predecessors, most recently as its Director of Psychiatric Day Treatment, Partial Hospitalization and Dialectical Behavior Therapy Services. In addition, the parties will agree that he separated from employment on or about November 4, 2004.

## III.  CONTESTED ISSUES OF FACTS

1.    Did the defendants fail to provide the plaintiff with a right under the FMLA, to wit, intermittent leave to take care of his ill daughter?

2.    Did the defendants retaliate against the plaintiff for exercising his right to take intermittent leave under the FMLA to care for his ill daughter?

3.    What is the amount of wages, salary, employment benefits or other compensation denied or lost to Mark Richards by reason of violations of the FMLA?

4.    What is the prevailing rate of interest on such amount?

5.    Have the defendants proven to the satisfaction of the Court that their violations of the FMLA were in good faith and that the employer had reasonable grounds for believing that their acts or omissions were not a violation of the FMLA?

6. What is appropriate equitable relief, including reinstatement with full seniority rights or a comparable award of front pay?

7. Did the plaintiff Mark Richards have an association with a person with a disability?

8. Did the defendant RVCC retaliate against Mark Richards based on stereotypical thinking about his relationship with his daughter and the impact that would have on his ability to successfully perform his job duties.

9. What is the amount of compensatory damages, including claims for emotional distress, which the plaintiff is entitled to?

10. Did the defendants act with the knowledge that they may be acting in violation of federal law?

11. If so, what is the appropriate amount of punitive damages designed to punish or deter the conduct of the defendants?

12. What is the amount of equitable relief, including back pay, which is appropriate to remedy the acts of discrimination in violation of the ADA?

13. Is there any reason not to impose the preferred remedy of reinstatement, with full seniority benefits, to Mr. Richards, or is an award of front pay an adequate substitute?

### IV. JURISDICTIONAL QUESTIONS

None.

### V. QUESTIONS RAISED BY PENDING MOTIONS

None.

466524 v4                                                                                                                       6

## VI.  ISSUES OF LAW/EVIDENTIARY QUESTIONS

A. **Issues Involving Monetary Damages.**

1. <u>Emotional Distress Damages Under the FMLA</u>.  The plaintiff recognizes that most courts have held that emotional distress damages are not available under the FMLA.  See generally, *Beebe v. Williams College*, 430 F.Supp.2d 18 (D.Mass. 2006).  The plaintiff understands, however, that the First Circuit has not definitively ruled on this issue and therefore reserves the right to make a claim for emotional distress damages at trial.

2. <u>Damages Under the FMLA and the ADA Are Not Identical</u>.  The damages available under the FMLA and the ADA are not identical.  A plaintiff can recover under both statutes provided that each is satisfied and the plaintiff does not recover for the same wrong under both provisions.  *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143 (10th Cir. 1999) (damages awarded under FMLA and Pregnancy Discrimination Act).

Under § 2617 of the FMLA, an employer is liable:

"(A) for damages *equal to* –

    (i)    the amount of –

        (I)    any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation; or

        (II)    in a case in which wages, salary, employment benefits, or other compensation have not been denied or lost to the employee, any actual monetary losses sustained by the employee as a direct result of the violation, such as the costs of providing care, up to a sum equal to 12 weeks of wages or salary for the employee;

    (ii)    the interest on the amount described in clause (i) calculated at the prevailing rate; and

    (iii)    an additional amount as liquidated damages equal to the sum of the amount described in clause (i) and the interest described in clause (ii), except that if an

>  employer who has violated section 2615 … proves to the satisfaction of the court that the act or omission … was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation …, such court may, in the discretion of the court, reduce the amount of the liability to the amount and interest determined under clauses (i) and (ii), respectively; and
>
>  (B) for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." (Emphasis added)

In sum, an employer could be liable under the FMLA for "wages, salary, employment benefits, or other compensation" under clause (i), plus interest under clause (ii), plus liquidated damages equal to the sum of the amounts awarded under clauses (i) and (ii).

Courts have held that the damages available under the FMLA are not synonymous with "back pay." *Carr v. Fresenius Medical Care*, 2006 WL 1339970 (E.D. Penn. 2006); *Longstreth v. Copple,* 101 F. Supp. 2d 776 (N.D. Iowa 2000). Furthermore, courts have held that the phraseology of the damages provision of the FMLA is unique compared to other employment discrimination statutes. Id.

The Carr court observed that the FMLA postdates the passage of and significant amendments to employment statutes such as Title VII and ERISA which use the term "back pay." Id. Consequently, the Carr court surmised that Congress acted intentionally when it crafted the language of the remedial provision of the FMLA, specifically omitting the term "back pay," although that term was widely used elsewhere. Id., citing *Longstreth* at 780-81. Contrasting the "an amount of damages equal to" language of the FMLA with the "back pay" language of Title VII, the Carr court observed that Congress "could have quite easily used the existing Title VII language, but it chose not to." Id. The *Carr* court ultimately held that a "recovery under the FMLA does not constitute 'back pay' but an amount of damages 'equal to' *the sum of the various components*, including, but not limited to, lost wages," *which could encompass damages for non-wage benefits*. Id. (Emphasis added).

466524 v4                                                                                                                          8

The *Longstreth* court held that Congress' use of the phrase "an amount equal to" instead of "backpay" was intentional because Congress intended to impose individual liability under the FMLA. If individuals are held liable under the FMLA, they cannot pay traditional "back pay" damages because no employer-employee relationship exists. Under the FMLA, individual defendants are required to pay damages "equal to the amount of" any denied wages, etc. The *Longstreth* court held that the unique language of the FMLA damages provision was intentional to redress violations by individuals who were not responsible for the plaintiff's "pay" when plaintiff was employed. *Longstreth* at 778, 780. The court noted that the term "backpay" does not appear in the FMLA, whereas "backpay" is expressly provided for in the damages provisions of both Title VII and the ADA, both of which do *not* allow for individual liability. Id. Congress necessarily had to use a term other than "back pay" since an individual defendant is not responsible for a plaintiff's "pay."

The *Atchley* case is instructive. In *Atchley*, the plaintiff brought suit for violations of the FMLA and Pregnancy Discrimination Act ("PDA") under Title VII after she had been terminated from her position after returning from maternity leave. The jury found in her favor, and the Tenth Circuit affirmed on appeal. The damages awarded were as follows:

- $9,000 in backpay
- $8,000 for emotional distress
- $9,000 in liquidated damages under FMLA
- $65,000 in punitive damages under Title VII

On appeal, the defendant argued that the award of liquidated and punitive damages constituted an impermissible double recovery. *Atchley* at 1151-52, citing *Bruno v. Western Electric Co.*, 829 F.2d 957 (10th Cir. 1987), and *quoting Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442 (10th Cir. 1997) ("double recovery is precluded when alternative theories seeking

the same relief are pled and tried together"). Plaintiff countered, pointing out that <u>Bruno</u> did not apply as it was decided under the ADEA which expressly provides for liquidated damages and was silent as to punitives. Moreover, plaintiff noted that <u>Bruno</u> did not involve recovery for *wrongs under two separate acts* (emphasis added).

In upholding the award for the plaintiff, the *Atchley* court observed that "the misconduct under Title VII was against Ms. Atchley in comparison to non-pregnant employees, whereas the misconduct under the FMLA was for failing to comply with the statutory mandate of restoring Ms. Atchley to her prior position." *Atchley* at 1152, citing *Mason* at 1460 ("multiple punitive damage award on overlapping theories of recovery may not be duplicative at all, but may instead represent the jury's proper effort to punish and deter all the improper conduct underlying the verdict.").

The district court in *Atchley* applied the reasoning from <u>Mason</u>, stating:

"Title VII was enacted to curb racial and gender discrimination in the work place, and the corresponding damage awards are meant to compensate the victim and punish the violator for such discrimination…. By contrast, the objectives of the FMLA are inter alia to balance the demands of the workplace with the needs of families and to promote national interest in preserving family integrity and to entitle employees to take reasonable leave for medical reasons [such as] for the birth … of a child. *The jury award in this case addresses two separate and distinct wrongs, notwithstanding the fact they are based on the same conduct.* Hence, the Court, in light of the separate statutory schemes and purposes thereof, finds that the jury's award of punitive and liquidated damages does not constitute double recovery." (Emphasis added)

Under the ADA, Richards could recover compensatory damages which include his lost wages and benefits and pain, suffering and mental anguish, along with punitive damages. As noted above, FMLA damages do not include punitive damages, but do include liquidated damages. As a result, like in *Atchley*, Richards' damages award will be a mixed bag of compensatory, liquidated and punitive damages.

3.  <u>Since the ADA and FMLA Prefer Reinstatement as an Equitable Remedy Should the Court Order Reinstatement in This Case</u>.  Absent extraordinary circumstances, victims of unlawful discrimination are entitled to be made whole for their losses. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 421-422, 95 S.Ct. 2362 (1975), cited with approval in *Sprague v. United Airlines,* 2002 W.L. 1803733*19-20 (D.Mass.) (Judge O'Toole orders United Airlines to reinstate line mechanic illegally discriminated against due to his hearing impairment.)  In *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 19 (1st Cir. 1999), the Court noted that:  "Reinstatement is the 'overarching preference' among all equitable remedies under the ADA, as it most efficiently furthers the 'dual goals of providing full coverage for the plaintiff and of deterring such conduct by employers in the future' " (citation omitted).

### VII. ANY REQUESTED AMENDMENTS TO THE PLEADINGS

None.

### VIII. ANY ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE CASE

None.

## IX.  LENGTH OF TRIAL (JURY OR NON-JURY)

A.  **As to Jury or Non-Jury.**

The plaintiff believes the jury should hear all relevant evidence and provide an advisory opinion to this Court on the issue of whether the defendants have proven that their acts or omissions in violation of the FMLA were in good faith and that the employer had reasonable grounds for believing that the acts or omissions were not a violation of the FMLA.  Furthermore, the jury's findings on damages under the FMLA should inform the Court on its decision of what equitable relief to award under the ADA.

The plaintiff recognizes that the issue of whether to order reinstatement or grant an award of front pay is an issue for the Court and would suggest that there would need to be only limited additional testimony that would be needed on that issue.  This additional testimony could be taken once the jury has retired to deliberate.

B.  **As to the Probable Length of Trial.**

The plaintiff believes if the trial starts on a Monday the jury could have the case by Friday.

## X.  WITNESSES

1. Mark A. Richards, 19 Lyman Road, Chester, MA.  (413) 667-3157.  Mr. Richards will testify as to all elements of his liability and damages.

2. David G. Mattocks, Vernon, VT.  Mr. Mattocks is expected to testify about Mr. Richards's tenure at River Valley Counseling Center and the facts and circumstances leading up to his termination of Mr. Richards.

3. Donna Viens, Director of Human Resources for River Valley Counseling Center, 319 Beech Street, Holyoke, MA.  Ms. Viens will testify to Mr. Richards's request for FMLA leave as

well as the discussions she had, and actions she took, leading up to the termination of Mr. Richards.

4. Leigh Richards, 19 Lyman Road, Chester, MA. (413) 667-3157. Leigh Richards is the plaintiff's daughter and will testify to her medical condition and the impact of the termination on her father.

5. Karen Richards, 19 Lyman Road, Chester, MA. (413) 667-3157. Karen Richard is the plaintiff's wife and will testify to her daughter's illness and the impact of the termination on Mr. Richards.

6. Hank Porten, CEO, Valley Health Systems, 20 Hospital Drive, Holyoke, MA. Mr. Porten will testify to the policies of RVCC; his relationship with RVCC; discussions Mr. Mattocks had with him concerning the termination of the plaintiff; and his expectations of Mr. Mattocks.

7. David Avakian, c/o Holyoke Medical Center, 575 Beech Street, Holyoke, MA. Mr. Avakian will testify to Mr. Richards's competence and skill as an operational manager, clinician and financial manager, as well as the facts and circumstances surrounding Mr. Richards's termination and his subsequent change in responsibilities. Mr. Avakian will also testify to the regulations governing the position of the Director of the Psychiatric Day Treatment Center.

8. Jeff Kassis, River Valley Counseling Center, 319 Beech Street, Holyoke, MA. Mr. Kassis will testify to the high regard in which the general community held Mr. Richards; Richards skills as a manger and clinician; the financial success of programs Richards' managed; his own lack of qualifications to take over as Program Director; his willful refusal to verify if

Mattocks' conduct violated state regulations as well as the relationship between RVCC and Valley Health Systems and other components of the Holyoke Medical Center system.

9. Brian Duke, Former Fiscal Director, River Valley Counseling Center, 319 Beech Street, Holyoke, MA.  Mr. Duke will testify that Mr. Richards's program was one of the best-performing programs financially.

10. Sean Munster, Business Director, River Valley Counseling Center, 319 Beech Street, Holyoke, MA.  Mr. Munster will testify that Mr. Richards's program was one of the best-performing programs financially.

11. Antonio Correia , CFO, Holyoke Medical Center, 575 Beech Street, Holyoke, MA.  Mr. Correia will testify to his expectations of directors such as Mr. Mattocks regarding documenting anticipated cost savings and financial plans.

12. Dr. Abraham Linn, 83 Stony Hill Road, Amherst, MA 01002.  Dr. Linn will testify to the high regard he, and other members of the professional community, held Mr. Richards in regarding his managerial and clinical skills.

13. Mary Kelleher, Holyoke Medical Center, 575 Beech Street, Holyoke, MA.  Ms. Kelleher is the Vice President of Human Resources for the entire Holyoke Hospital organization.  She provided human resources services to RVCC on a consulting basis.  She will testify to the facts and circumstances surrounding the termination of Mr. Richards, including her knowledge that he had applied for FMLA leave and her reckless disregard of Mr. Richards' exercise of that right.

## XI.  EXHIBITS

The defendants object to Exhibits 2, 3, 4, 19 and 21.

466524 v4                                                                                                                                        14

1. Personnel File of Mr. Richards from River Valley Counseling Center

2. Gateway Regional School District Section 504 Conference Committee Report and 504 Individualized Education plan of Mr. Richards's daughter Leigh Richards

3. HealthCare Review article, dated 8/23/04, and MassLive.com article, dated 8/25/04, both concerning Mr. Mattocks

4. Correspondence from Atty. Sikorski, including articles and literature concerning Parkwood University and diploma/degree mills

5. Commonwealth of Massachusetts Division of Medical Assistance Provider Manual Series: Psychiatric Day Treatment Program Manual (4 Program Regulations: 130 CMR 417.000)

6. Job advertisements for position at River Valley Counseling Center

7. Tax returns of Mr. Richards, for years 2002 – 2005

8. Memo from David Mattocks, dated July 6, 2004, re:  General Wage Increase

9. Memo from David Mattocks, dated August 12, 2004, re: Salary Increases

10. E-mail from David Mattocks, dated August 17, 2004 - 12:53 PM, re:  Dates of Interest

11. Memo from David Mattocks, dated September 2, 2004, re: Billing

12. E-mail from Plaintiff to David Mattocks, dated September 3, 2004, re: Response Billing Memo

13. E-mail from David Mattocks to Sean Munster, dated September 3, 2004, re:  Supervision Meeting 9/8/04

14. Crossroads Day Treatment/Partial Hosp. Productivity Reports – FY 2004

15. Crossroads Day Treatment/Partial Hosp. Productivity Reports – FY 2005

16. Allowed & Taken Report – Dated 8/12/04

17. Memorandum to David Mattocks from Mark Richards, dated 10/26/04

466524 v4                                                                                           15

18. Response to Billing Memo, from Mark Richards to David Mattocks, dated September 3, 2004

19. MCAD charge of discrimination

20. Business plan of plaintiff (for plaintiff's new business, Berkshire Counseling Services)

21. Compensation Analysis

22. Certification of Health Care Provider, signed by Leigh Richards' physician, Arthur Blake, MD

23. August 30, 2004 memorandum from plaintiff, Mark Richards, to David Mattocks, CEO

24. LOA – Form 1: Request for Leave of Absence

25. Correspondence from Donna Viens, Director, Human Resources, dated September 3 , 2004 and September 17, 2004 River Valley Counseling Center, Inc. LOA Request Form

26. Employer Response to Employee Request for Family Medical Leave

27. Excerpts from Plaintiff's diaries/Day Calendar.

28. A portion of Mark Richard's handwritten notes taken on the day of his termination.

                                          THE PLAINTIFF
                                          MARK A. RICHARDS

By    */s/ John C. Sikorski*
John C. Sikorski, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 461970
jsikorski@robinson-donovan.com

CERTIFICATE OF SERVICE
I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 18TH day of December, 2006.

                                          _____*/s/ John C. Sikorski*_____
                                          John C. Sikorski, Esq.

466524

**Exhibit A**
**Mark Richards Compensation Analysis**

Baseline Assumptions
| | | |
|---|---|---|
| Hourly compensation on date of termination of employment | $ | 27.18 |
| Hours worked per week | | 34 |
| Weeks worked per year | | 52 |
| Date on which raise of 2-3% was supposed to be effective | | 7/1/2004 |
| Assumed raise % | | 2.5% |
| Date of termination | | 11/4/2004 |
| Date on which Mr. Richards' compensation from new venture is expected to reach the level he had achieved upon termination | | 1/1/2008 |
| Number of hours per day (based upon 34 hour week) | | 6.8 |
| Unemployment benefits collected | $ | 536 |
| Weeks that unemployment has been collected | | 37 |
| Group life per year | $ | 250 |

Unpaid Wages Calculation
| | | |
|---|---|---|
| Hourly compensation that should have been paid from 7/1/04-11/4/04 | $ | 27.86 |
| Shortfall on hourly wage | $ | 0.68 |
| Number of M-F worked days in July | | 22 |
| Number of M-F worked days in August | | 22 |
| Number of M-F worked days in September | | 22 |
| Number of M-F worked days in October | | 21 |
| Number of M-F worked days in November | | 4 |
| Total number of M-F worked days from 7/1/04 - 11/4/05 | | 91 |
| Total number of hours during the aforesaid period | | 618.80 |
| **Shortfall on wages due to hourse worked and underpaid** | **$** | **420.47** |

Sick Pay Calculation
| | | |
|---|---|---|
| Total accumulated and uncompensated sick pay hours | | 520 |
| Adjusted hourly compensation as of date of termination | $ | 27.86 |
| **Value of Sick Pay** | **$** | **14,486.94** |

Vacation Pay Calculation
| | | |
|---|---|---|
| 168 hrs per year x 2 years = 312 Hrs. | | 312 |
| $28.56 per hr | | $28.56 |
| **Value of Vacation Pay** | **$** | **8,910.72** |

Back Pay Calculation (from 11/4/04 - 12/4/06)
| | | |
|---|---|---|
| Remaining weeks in 2004 (after 11/4/04) | | 8.2 |
| Weeks from 1/1/05 - 6/30/05* | | 26 |
| Compensation rate for 11/8/04-6/30/05* | $ | 27.86 |
| Hours in 2004 (after 11/4/04) | | 278.8 |
| Hours during 1/1/05 - 6/30/05* | | 884 |
| Total compensation for 11/4/04 - 12/31/04 | $ | 7,767.23 |
| Total compensation for 1/1/05 - 6/30/05 | $ | 24,627.80 |
| Weeks from 7/1/05 through 6/30/06 | | 52 |
| Compensation rate for 7/1/05-6/30/06* | $ | 28.56 |
| Hours per year based upon 52 weeks, 34 hours per week | | 1,768 |
| Total Compensation for 7/1/05 - 6/30/06 | $ | 50,486.99 |
| Total Weeks from 7/1/06 through 12/4/06 | | 22.2 |
| Hours based upon 34 hours per week 7/1/06 - 12/4/06 | | 754.8 |
| Compensation rate for 7/1/06 - 12/4/06 | $ | 29.27 |
| Total Compensation for 7/1/06 - 12/4/06 | **$** | **22,092.91** |
| **Total Back Pay from 11/4/04 - 12/4/06** | **$** | **104,974.92** |

| | | |
|---|---|---|
| **Total Back Pay, Sick Pay, Vacation and Wage Shortfall** | **$** | **129,043.06** |

Potential Offset of Wages for Unemployment collected for 37 weeks & other income
| | | |
|---|---|---|
| Unemployment compensation collected for 37 weeks | $ | 22,512.00 |
| ** Westover Consultants (SAMHSA) | $ | 13,800.00 |
| ** Westover Consultants Adjustments | $ | (1,055.70) |
| Berkshire Health Systems | $ | 8,532.00 |
| **Total Potential Offsets** | **$** | **(43,788.30)** |

| | | |
|---|---|---|
| **Net Back Pay After Offset of Income Collected** | **$** | **85,254.76** |

Front Pay Calculation (from 12/5/06 - 12/31/07)
| | | |
|---|---|---|
| Compensation rate for 12/4/06 -6/30/07* | $ | 29.27 |
| Total Weeks from 12/4/06 through 6/30/07 | | 29.8 |
| Hours based upon 34 hours per week 12/4/06 - 6/30/07 | | 872.2 |
| Total compensation for 12/4/06 - 6/30/07* | $ | 25,530.44 |
| Compensation rate for 7/1/07 - 12/31/07* | $ | 30.00 |
| Total Weeks from 7/1/07 through 12/31/07 | | 26 |
| Hours based upon 34 hours per week 7/1/07 - 12/31/07 | | 884 |
| Total compensation for 7/1/07 - 12/31/07* | **$** | **26,521.44** |
| **Total Front pay for 12/5/06 - 12/31/07** | **$** | **52,051.89** |

| | | |
|---|---|---|
| **Total Net Back Pay + Front Pay** | **$ 137,306.65** | |
| **Total Net Back Pay + Front Pay if Net Back Pay is Doubled** | **$ 222,561.40** | |

Totals Do *Not* Include Interest
*We assumed that Mr. Richards received a 2.5% raise each year on 7/1 and further assume that 26 of the 52 weeks occurred between 1/1 and 7/1 and the other 26 of the 52 weeks occurred between 7/1 and 12/31
**Mr. Richards was an independent contractor & had to pay 7.65% FICA & Medicare tax on earnings of $13,800.

406548

**Exhibit B**
**SUMMARY OF CLAIM OF MARK RICHARDS**

**Damages Under the FMLA Calculated as of the Time of Trial**

I.  Economic Damages                           $_____

    Interest at Rate Set in 28         _____
    U.S.C. § 1961
    Add'l Amt of Interest              $_____

    **SUBTOTAL**                                                $_____

II. Add'l Amt as Liquidated               $_____
    Damages

    Add'l Amt of Interest              $_____

    **SUBTOTAL**                                                $_____

    **TOTAL FMLA DAMAGES**                              $_____

**Damages Under the ADA**

I.  Compensatory Damages
    Capped at $50,000              $50,000.00

    Interest at Rate Set in 28         _____
    U.S.C. § 1961
    Add'l Amt of Interest              $4,375.00

    **SUBTOTAL**                                                **$54,375.00**

II. Back Pay as Equitable             $_____           $_____
    Remedy - as determined by
    Court

    **TOTAL ADA DAMAGES**                              $_____

III. Attorney's Fees through Trial    $_____           $_____

    Costs through Trial            $_____           $_____

**SUBTOTAL**                                                $_____

| | | |
|---|---|---|
| IV. Front Pay in Lieu of Reinstatement Under Both ADA and FMLA - to be Determined by Court | $_____ | $_____ |
| **TOTAL** | | $_____ |

V. ADA and FMLA both View Reinstatement with Full Seniority Rights as the Preferred Remedy

465189v.5